540 P.2d 651

**PHELPS DODGE CORPORATION,**
Appellant,

v.

**Louie E. BROWN, a married man,**
Appellee.

**No. 11701.**

Supreme Court of Arizona,
In Division.
Sept. 25, 1975.

**180**

Evans, Kitchel & Jenckes, by Stephen W. Pogson, Phoenix, for appellant.

Cecil Peter Whitmer, Tempe, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is an appeal from a judgment for the appellee, Louie E. Brown, against the appellant, Phelps Dodge Corporation, for $1,950.00.

The relevant facts reveal that appellant terminated appellee's employment on April 26, 1968. Prior to his termination, appellee had worked for appellant under an oral contract for approximately twenty-three years. In 1967, appellee was suspended from work forty-five days for unauthorized possession of tires belonging to the company, and in 1968, upon discovering that appellee was constructing a trailer on company time and using company property without authorization, appellant fired appellee. Appellee brought suit for damages for wrongful discharge, for a pension and for benefits under an Unemployment Benefit Plan (hereinafter referred to as the Plan). The only issue remaining for trial was whether or not appellee was entitled to recover under the Plan. The jury found for appellee. Reversed.

In giving its instructions to the jury, the trial court said:

"* * * You are further instructed that under the terms of the employment benefit plan No. 2 and as a matter of law, that when Brown was terminated by Phelps Dodge because of the trailer incident, that act of termination necessarily included a determination on the part of Phelps Dodge that Brown had been laid off from work because Phelps Dodge had determined that work of any sort for the company was not available for Brown individually.

You are further instructed that in order to be eligible for benefits, certain determinations have to be made by Phelps Dodge. In the language of the unemployment benefits plan No. 2, those are:

'In order to be eligible for unemployment benefits, a laid-off employee must:

1. Have completed two or more years of continuous service with the company, and

2. Have been laid off from work because the company had determined that work was not available for him.'

The sole question for your determination is whether Phelps Dodge acted arbitrarily, capriciously, and without good faith in denying Brown eligibility to receive benefits under the unemployment benefit Plan No. 2.

\* \* \* \* \* \*

If you find that Phelps Dodge acted arbitrarily or capriciously or without good faith in denying Brown eligibility for benefits under the unemployment

benefit plan No. 2, then your verdict should be for Brown and against Phelps Dodge in the amount of $1,950."

The trial court ruled, in denying appellant's Motion for Directed Verdict, that an ambiguity existed in the Plan as to who was eligible for the benefits since the requirement "Have been laid off from work because the company had determined that work was not available for him" was open to at least two possible interpretations. The trial court noted that the two possible interpretations were (1) that the company had determined it would not hire or continue to employ appellee under any circumstance and, therefore, work was not available for him, individually, and (2) it could be interpreted that the work category was not available for appellee or anyone else in his category. Because of the ambiguity, the trial court construed the contract against the party who chose the wording, in this case appellant.

It then determined that appellee was eligible for the payments since by firing appellee, appellant was saying that there was no work for appellee individually. The only issue thus left for the jury was whether appellant acted arbitrarily, capriciously, and without good faith in denying appellee eligibility to receive benefits under the Plan.

The object of all rules of interpretation is to arrive at the intention of the parties as it is expressed in the contract. *Sam Levitz Furniture Co. v. Safeway Stores, Inc.*, 105 Ariz. 329, 464 P.2d 612 (1970). There are many rules of interpretation which can be utilized in reaching the intent of the parties. These include giving words their ordinary meaning, giving technical terms their technical meaning, reading the contract as a whole, giving effect to the main purpose of the instrument, and interpreting the contract so as to make it effective and reasonable. *See* 3 Williston on Contracts, §§ 618–626 (3rd Ed. 1961).

We believe the trial court, in construing the terms most strongly against the party who chose the wording, without first utilizing other rules of construction, acted contrary to standard principles. *Hamberlin v. Townsend*, 76 Ariz. 191, 261 P.2d 1003 (1953).

Professor Corbin, criticizing the rules of construction used by the trial court, said:

"It is frequently said that this rule is to be applied only as a last resort. It should not be applied until other rules of interpretation have been exhausted; nor should it be applied unless there remain two possible and reasonable interpretations. The rule is hardly to be regarded as truly a rule of interpretation; its application does not help to determine the meaning that the two parties gave to the words, or even the meaning that a reasonable person would have given to the language used." 3 Corbin on Contracts § 559 (1960).

From a reading of the entire contract, it becomes obvious that no ambiguity exists. It is clear that the contract was not meant to apply to someone who was dismissed for cause.

The Purpose of the Plan, Article III, specifically states who the Plan covers. This Article reads:

"It is the purpose of this Plan to provide unemployment payments for laid-off employees to the extent and in the manner prescribed hereunder."

Article V, Part A, Eligibility for and Payment of Benefits, was quoted by the trial court in its instructions to the jury. Part B of that Article reads:

"B. Determination of Eligibility.

When an employee is laid off the Company shall determine whether he is eligible for a Benefit. * * *"

From a reading of the Plan as a whole, it is clear that it was to cover employees who were laid-off and not employees who were dismissed for cause.

The trial court, in denying appellant's Motion for Judgment Notwithstanding the Verdict or a New Trial, stated:

"Until presented with Defendant's Memorandum in support of its motion, the

Court was of the impression that the terms 'laid off', 'terminated', 'discharged', and 'fired', were synonymous terms used by the employer or the employee to emphasize or mitigate the amount or lack of animosity existing at the conclusion of an employee's employment, and in part depended for interpretation on who was using the word and to whom the word was being used."

The words "lay-off" and "discharge" have a normal and understood meaning in both common and industrial usage and the use of one instead of the other is sufficient to escape the charge of ambiguity. *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 84 N.W.2d 593 (1957). The United States Supreme Court recognized the difference in *Fishgold v. Sullivan Drydock and Repair Corporation,* 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). Appellant in that case argued that the word "discharge" used in the Selective Training and Service Act of 1940, which insured that an employee who entered military service and then returned to his pre-war job "shall not be discharged from such position without cause within one year after such restoration", included "lay-off." The Court disagreed, recognizing that the word "discharged" meant a termination of the employment relationship and that "laid-off" meant that the employee was temporarily dismissed.

The distinction has been recognized by other courts. For example, in *Conner v. Phoenix Steel Corporation,* 249 A.2d 866 (Del.1969), the court said:

"Thus, 'discharge' normally means the termination of the employment relationship with no expectation of return, while 'lay off' normally means a temporary cessation of employment with an expectation of eventual return." 249 A.2d at 869.

In support of the finding that appellant had failed to specifically state who was eligible for benefits under the Plan, the trial court also noted that the terms "a quit", "discharge", "lay off", "disciplinary lay-off", and "laid off" were all used in the Plan but that none was defined. By reading the Plan as a whole and noting the context within which each of the terms was used, it becomes obvious that no ambiguity exists merely because the different terms were used but not defined.

The three terms, "a quit", "discharge" and "lay off" were used in defining what is meant by a break in employment. The Plan, in defining "Continuous Service", Article XIII, reads in part:

"* * * The employment of an Employee shall be deemed to have been broken (a) by a quit, discharge or failure to return to work upon recall, or (b) except as otherwise provided in this definition, by a lay-off, absence for sickness, or leave of absence, of one year or more. * * *"

The terms used in (a) and (b) of the quoted portion of Article XIII are clearly not used synonymously. The two subdivisions provide different methods by which a break in employment can occur. The terms in group (a) do not require that any time limit pass before they are effective and apply to situations where an employee is permanently dismissed. In (b), there must be a passing of one year following the happening of one of the three events before a break in employment occurs. There is a clear distinction drawn between the terms.

The term "disciplinary lay-off" is found in the definition of "employee." That definition reads:

"An employee of the Company covered by the Plan as provided in Article I hereof who is listed on the payroll of the Company, is scheduled by the Company to work and is actively at work, or who would be actively at work unless not working by reason of (i) observance of the working schedules of the Company, (ii) compensable injury or disability, (iii) disciplinary lay-off, (iv) absence without leave until return or discharge, or (v) absence because of vacation, authorized leave of absence or absence not in excess of two years due to temporary sickness or noncompensable injury."

The term "disciplinary lay-off" is included in the terms that signify why an employee is not actively at work. All the reasons apply to people who are on the payroll of the company and who are expected to return to work. An employee such as appellee, whose employment is terminated for cause, it not one who would still be on the payroll, nor would the company expect him to return to work. The term "disciplinary lay-off" must be understood to mean a situation where a person, while still an employee, is refused work for a temporary period of time because of wrongdoings. It cannot be construed to mean an employee in appellee's position.

The terms "laid-off" and "lay-off" are used in other places in the Plan. The context in which they are used support our construction.

Appellee, however, in support of his contention that an ambiguity exists, refers to the use of the term "laid-off" in another paragraph of Article V. The pertinent portion reads:

"For the purposes of this Plan an employee shall not be considered to have been laid off, (i) when the nonavailability of work for him is due to the Company's decision to cease operations because of the existence of a work stoppage occurring anywhere in the operations of a Branch, or (ii) during any portion, up to three weeks, of any other suspension of operations; except for such weeks under (i) and (ii) for which he receives Arizona State unemployment compensation."

Appellee argues that by specifically excluding certain situations which would otherwise be lay-offs and not the situation in this case, obviously an ambiguity arises. But, as previously stated, appellee was not laid-off. Therefore, there is no reason to include his situation in the exclusion since it is excluded by definition. The restriction of the term "laid-off" is necessarily given here since, otherwise, the two situations excluded would be included in the term. By restricting the application of the

Plan the appellant has not made it ambiguous.

We therefore hold that as a matter of law the Plan is not ambiguous.

Appellee argues that appellant has changed its theory after the trial and its present theory should not be considered.

However, in support of its Motion for Directed Verdict, appellant pointed out that an examination of the entire Plan made it clear that its purpose was to provide for a reduction in force and not to cover those employees whose services were terminated for cause. Appellant's arguments on appeal do not constitute a new theory which was not presented to the court below.

Appellee also argues that even if appellant is correct in its contention that the trial court erred in interpreting the Plan it is immaterial because the jury must have found arbitrariness, caprice and lack of good faith on appellant's part independent of the trial court's interpretation of the contract. We do not think that the facts support appellee's position.

The jury was instructed that the Plan was applicable when appellant terminated appellee's employment and that the act of termination necessarily included a determination by appellant that appellee had been laid off from work because appellant had determined that work of any sort with the company was not available for appellee.

The trial court further instructed the jury that appellant had to make certain determinations before appellee would be eligible for benefits and, in the language of the Plan, those were:

"In order to be eligible for unemployment benefits, a laid-off employee must:

1. Have completed two or more years of continuous service with the company, and

2. Have been laid off from work because the company had determined that work was not available for him."

The jury was also instructed that the sole question for its determination was whether

appellant acted arbitrarily, capriciously and without good faith in denying appellee eligibility to receive benefits under the Plan.

Since the admitted facts were that appellee had worked for appellant longer than two years and the trial court had determined that the act of termination necessarily included a determination by the appellant that work was not available for appellee, the jury was left with no alternative except to find for appellee. Since as a matter of law no ambiguity existed and appellee was not entitled to recover under the Plan, it follows that there were no issues left for the jury to decide.

Judgment reversed with directions that judgment be entered for appellant.

CAMERON, C. J., and HAYS, J., concurring.