566 P.2d 1036

**Cecil HEARROLD, Appellant,**

v.

**Spencer GRIES and Realty Executives, Appellees.**

**No. 12687.**

Supreme Court of Arizona,
In Division.

July 7, 1977.

Hill & Savoy by Cheryl K. Hendrix, Phoenix, for appellant.

Robert F. Hughes, Phoenix, for appellees.

STRUCKMEYER, Vice Chief Justice.

Appellees, Spencer Gries and Realty Executives, brought this action against Cecil Hearrold for a commission on the sale of a cocktail lounge. On cross-motion for summary judgment, the trial court granted appellees' motion, entering judgment in the amount of $3,600 and costs. This appeal followed. Jurisdiction is pursuant to Rule 47(e), 17A A.R.S., Rules of the Supreme Court. Judgment of the trial court reversed with directions.

Appellant Hearrold was the owner of Victor's Cocktail Lounge located in Phoenix, Arizona. He entered into an exclusive written sales listing of his business with Spencer Gries, a licensed real estate broker. The agreement provided that it would be in effect from January 2, 1973 until February 3, 1973. Gries introduced two prospective purchasers to appellant on January 6, 1973. One of these, Ace Burney, subsequently met with appellant and Gries at Victor's Cocktail Lounge on January 22, 1973. No offer to purchase or contract of sale resulted from this meeting, although there is evidence that Burney was "enthusiastic" about the business and that Gries was going to draft an offer of purchase. This was not done because Burney wanted to consult with his partner before making an offer. Apparently Gries continued his efforts to obtain an offer from Burney but was unsuccessful. Finally, in the middle of February, Burney advised Gries that he had purchased a bar in Scottsdale, Arizona. Gries had no further contact with either Hearrold or Burney until he saw an application posted at the cocktail lounge to transfer the liquor license to Burney in August of 1973.

Negotiations between Burney and Hearrold broke off in January of 1973. However, Burney approached Hearrold in July of 1973 in a renewal of his efforts to purchase the cocktail lounge. A sales contract was entered into on August 1, 1973, whereby Hearrold sold the lounge to Burney. No real estate commission was ever paid Gries. Gries asserts that the evidence supports the

granting of summary judgment in his favor because he was the efficient, procuring cause of the sale. He relies on *Fink v. Williamson*, 62 Ariz. 379, 158 P.2d 159 (1945). *Fink* stands for the proposition that where several brokers are employed, the broker who is the procuring cause of a sale has earned a commission.

An exclusive listing agreement gives a broker the exclusive right to sell the property in question for a specified period. It also gives the broker the right to a commission if a sale is made by someone else during the period of the listing. *Galbraith v. Johnston*, 92 Ariz. 77, 81, 373 P.2d 587 (1962); and see *Van C. Angiris Co. v. Caine Steel Co.*, 20 Ill.App.3d 315, 314 N.E.2d 361, 366 (1974). But the fact that a broker's contract is exclusive does not give him the right to a commission upon a sale which was not consummated during the listing period. American Jurisprudence 2d puts it like this:

"The rule established or inferable from the cases seems to be that in the absence of collusion between the owner and the purchaser, or fraud practiced upon the broker, mere negotiations with a prospective purchaser for a sale not consummated within the listing period into a binding and enforceable contract to sell and to buy, do not amount to a sale within the meaning of such a brokerage contract so as to entitle the broker to his commissions, although such negotiations have eventually resulted in a sale made to such prospective purchaser with a deed executed and transfer made to him after the expiration of the listing period." 12 Am. Jur.2d, page 961, § 220, Brokers.

Restatement (2d), Agency, § 446, provides:

"An agent whose compensation is conditional upon his performance of specified services or his accomplishment of a specified result within a specified time is not entitled to the agreed compensation unless he renders the services or achieves the result within such time, unless the principal, in bad faith, has prevented him from doing so."

Comment (a) explains the section's application:

"a. * * * The rule is applied most frequently to promises to pay compensa-

tion to brokers in consideration for the production by the broker of a customer within a specified time. The usual interpretation of such an agreement is that the broker is to receive his commission only if he produces a customer able, ready, and willing to meet the principal's terms within the specified time, and hence no commission is payable to a broker for producing a prospective customer within the specified time if the latter does not come to an agreement with the principal until after the specified time, unless the principal has agreed with the broker to extend the time or in bad faith prolongs negotiations. *The broker can protect himself by requiring an agreement that he is to receive his compensation if he produces a customer who enters into negotiations with the principal within the specified time and subsequently completes the transaction.*" (Emphasis supplied.)

And see *Rieffer v. McGuire* (D.C.Mun.App.), 53 A.2d 784 (1947); *Estes v. Leibsohn*, 248 Iowa 1173, 85 N.W.2d 15 (1957); *Brenner and Co. v. Perl*, 72 N.J.Super. 160, 178 A.2d 19 (1962); *Parks v. Underwood* (Tex.Civ. App.), 280 S.W.2d 320 (1955); *Daltex Cattle Co. v. Hill* (Tex.Civ.App.), 43 S.W.2d 605 (1931).

As stated in the Restatement, supra, it is the broker's responsibility to protect himself in the contract by providing for his compensation if the transaction is completed after the specified listing time. *See* the annotation, "CONSTRUCTION OF PROVISION IN REAL–ESTATE BROKER'S LISTING CONTRACT THAT BROKER SHALL RECEIVE COMMISSION ON SALE AFTER EXPIRATION OF LISTING PERIOD TO ONE WITH WHOM BROKER HAS 'NEGOTIATED' DURING LISTING PERIOD." 51 A.L.R.3d, commencing at page 1149.

Judgment of the trial court is reversed and remanded with directions for proceedings not inconsistent with this opinion.

HAYS and HOLOHAN, JJ., concurring.