762 P.2d 124

**J.D. LAND CO., an Arizona corporation, Plaintiff/Appellant,**

v.

**Gerald KILLIAN and Emilie Killian, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 88–0098.

Court of Appeals of Arizona, Division 2, Department A.

April 14, 1988.

Review Denied Oct. 18, 1988.*

* GORDON, C.J., of the Supreme Court, did not participate in the determination of this matter.

Killian, Legg, Nicholas, Fischer, Wirken, Cook & Pew by Gail M. Ledward, Mesa, for plaintiff/appellant.

Earl, Baird & Williams by John W. Blischak, Phoenix, for defendants/appellees.

## OPINION

LACAGNINA, Chief Judge.

J.D. Land Co. appeals from judgment in favor of Gerald and Emilie Killian denying recovery of a real estate commission on an exclusive listing agreement. Killians contend that the exclusive agency agreement contemplated the payment of a commission only if a transaction actually closed during the time that the agreement was in effect. J.D. Land argues that if an agreement to sell was entered into before the expiration of the listing, even if the transaction closed after that time, a commission would be owing. We agree and reverse.

## FACTS

Killians owned 80 acres of land in Chandler, Arizona; 40 acres were held as husband and wife, and 40 acres were owned by Emilie alone. An exclusive "Authorization to Sell or Exchange" the entire 80-acre parcel (listing), dated May 1, 1984, was executed by Gerald Killian and Gary Davis, a licensed broker with J.D. Land. The listing contained an asking price of $1,800,-000 and gave J.D. Land the "exclusive right to sell or exchange" the subject property. By its terms, the agreement terminated on December 31, 1984.

The agreement also provided as follows:

Upon consummation of the sale or exchange I or we, agree to pay J.D. Land Co. a brokerage fee of $ 6% of Selling Price at close of escrow or 50% of the Earnest Money deposit in case same is forfeited by Purchaser, provided same shall not exceed the full amount of the brokerage fee.

I, or We, further agree that if a prospective Buyer is registered or introduced to us by you and hereafter purchases subject property, the same fee shall prevail.

Gary Davis, J.D. Land's broker, testified that he made efforts to market the property after receiving the exclusive listing to sell. During that time, Killians entered into agreements with a buyer to sell the property for a total purchase price of $1,600,000. The deal did not close, and the buyer cancelled escrow on October 1, 1984.

On October 22, 1984, without informing Gary Davis or anyone at J.D. Land, Killians entered into an agreement to sell the subject property to another buyer with escrow instructions reflecting that agreement. During that time, Gary Davis continued to make efforts to market the property. He presented three offers from different buyers to Gerald Killian during November and December 1984, offering selling prices ranging from $1,600,000 to $1,680,000. All three offers were rejected. The escrow on Killians' sales transaction with the buyer was opened on October 22, 1984, and closed on June 25, 1985, with no real estate brokers involved or commissions paid.

J.D. Land filed a complaint alleging that Killians had breached the exclusive agency contract and seeking to recover a 6% commission on the selling price of $1,600,000. Following trial, special interrogatories were submitted to the jury and, based upon the jury's findings, the court entered judgment in favor of Killians and ordered that J.D. Land's complaint be dismissed with prejudice.

## SPECIAL INTERROGATORIES

Interrogatories were submitted to the jury and answered as follows:

## INTERROGATORY # 1

Was the document entitled "Authorization to Sell or Exchange" (Exhibit 4) a valid contract?

  X   Yes

  \_\_\_   No

(Check one of the above)

If your answer is no, then do not answer the next interrogatory.

If your answer is yes, then answer the next interrogatory.

## INTERROGATORY # 2

Do you find that the document entitled "Authorization to Sell or Exchange" (Exhibit 4) was superceded [sic] or revoked by the document dated August 7, 1984 (Exhibit 5) [?]

  \_\_\_   Yes

  X   No

(Check one of the above)

If your answer to the foregoing interrogatory is yes, then do not answer the next interrogatory.

If your answer to the foregoing interrogatory is no, then answer the next interrogatory.

## INTERROGATORY # 3

Under the terms of the "Authorization to Sell or Exchange" (Exhibit # 4), at what point did the parties intend that J.D. Land Co. would become entitled to a commission:

  \_\_\_   When a ready, willing and able buyer entered into a valid contract to purchase the property.

  X   Upon close of escrow for the sale of the property.

(Check one of the above)

## OBJECTION TO INTERROGATORY NO. 3

Counsel for J.D. Land requested, and the court refused, to instruct the jury that under an exclusive listing agreement, the broker is entitled to the stated fee "if, during the term of the agreement, an enforceable contract for purchase of the property is entered into, even though the actual transfer of the property or closing of the sale

occurs after the listing expires." J.D. Land's attorney objected to the court's refusal of its proposed instruction, and from our review of the record, it is clear that J.D. Land's attorney was also objecting to the court's submission of the issue framed by Interrogatory # 3. Counsel properly objected prior to the submission of the case to the jury.

## CONTRACT AMBIGUITY

Killian argues he intended by the execution of the exclusive authorization that J.D. Land would be entitled to a commission only if any sale actually closed during the time the agreement was in force, based on the language that "upon consummation of the sale," a brokerage fee would be paid. The court found that language ambiguous and submitted the factual question to the jury in Interrogatory # 3. We do not find such an ambiguity.

■ A contract is not ambiguous merely because the parties disagree as to its meaning. *Triangle Construction v. City of Phoenix*, 149 Ariz. 486, 720 P.2d 87 (App.1985); *Autonumerics, Inc. v. Bayer Industries, Inc.*, 144 Ariz. 181, 696 P.2d 1330 (App.1984). An agreement is ambiguous only if the language can reasonably be construed in more than one sense and the construction cannot be determined within the four corners of the instrument. *McCutchin v. SCA Services of Arizona, Inc.*, 147 Ariz. 234, 709 P.2d 591 (App. 1985); *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.*, 143 Ariz. 527, 694 P.2d 815 (App. 1984). Whether a contract is ambiguous is a matter for the court to decide. *Id.* In addition, we are not bound on appeal by the trial court's legal conclusions. This court will make its own independent determination. *Id. See also Triangle Construction v. City of Phoenix, supra.*

■ The agency agreement is not ambiguous. It gives J.D. Land the exclusive right to sell the Killians' property and provides that Killians will pay either a 6% commission upon "consummation of the sale," that is, either at the close of escrow

or, if escrow does not close, 50% of any earnest money deposit forfeited by the buyer. The language of the parties' agreement is not susceptible to an interpretation that J.D. Land would earn a commission only if close of escrow occurred before the termination date of December 31, 1984. The fact that Gerald Killian intended otherwise does not itself raise an ambiguity. *Galbraith v. Johnston*, 92 Ariz. 77, 81, 373 P.2d 587, 590 (1962); *Phillips v. Flowing Wells Unified School District*, 137 Ariz. 192, 669 P.2d 969 (App.1983). *See also Hearrold v. Gries*, 115 Ariz. 560, 561, 566 P.2d 1036, 1037 (1977). The obligation to pay a commission under the agreement arises upon the execution of a binding contract for sale, and the reference to "consummation of a sale" merely establishes when the payment is due. There is nothing from which a reasonable person reading the contract can conclude that close of escrow within the period of the agency contract is a condition precedent to the Killians' obligation to pay a commission. *See Realty Associates v. Valley National Bank*, 153 Ariz. 514, 518, 738 P.2d 1121, 1125 (App.1986).

## BREACH OF EXCLUSIVE AUTHORITY TO SELL

■ J.D. Land further argues that, even assuming the issue of when it was entitled to a commission was properly submitted to the jury, the jury's answer to Interrogatory # 3 does not mandate entry of judgment in favor of Killians. We agree. When an owner gives an agent an exclusive right to sell property within a specified time, the owner contracts that he will not make a sale through another agent during that time because to do so would result in a breach of the exclusive agency agreement. *Mattingly v. Bohn*, 84 Ariz. 369, 329 P.2d 1095 (1958). The purpose of not permitting an owner to make a sale in breach of an exclusive right to sell is to afford the agent with the contract the opportunity to perform and to earn a commission. *Id.* In *Mattingly v. Bohn,* a broker had an exclusive right to sell property for a specified period of time during which the owners contracted to sell the property to a pur-

chaser not procured by the broker. The escrow never closed, and after the exclusive listing expired, the owners argued that because the escrow had not been completed and a deed was not delivered to the purchaser, the broker was not entitled to a commission because a sale had not occurred. Our supreme court disagreed stating:

> It is not always necessary to constitute a sale that a conveyance must be made or the title pass. * * * The word sale has not a fixed and invariable meaning. It may be given a narrow or broad meaning depending upon the circumstances and what the parties reasonably intend.

84 Ariz. at 371, 329 P.2d at 1096. Additionally, the court pointed out that a binding contract of sale with an established escrow is equally as effective to prevent or frustrate an exclusive agent's performance as is a completed transaction with a delivered deed. *Id.* That is exactly what happened in this case. After Killians had executed undisclosed agreements to sell the property to buyer, Gerald Killian rejected three offers which were presented to him by J.D. Land. Once the jury had determined that the authorization to sell was a valid contract and that it had not been superseded or revoked, the undisputed facts required the court to find as a matter of law that Killian had breached the agency agreement by contracting to sell the property to the buyer.

■ J.D. Land had an exclusive right to sell Killians' property, which right terminated December 31, 1984. The contract of sale entered into between Killians and the buyer on October 22, 1984, constituted a breach of the agency agreement with J.D. Land. The fact that this transaction did not close until June 25, 1985, does not relieve Killians of liability for breach of the exclusive agency. Killians frustrated J.D. Land's abilities to perform the contract and earn a commission by placing their own deal in escrow. These facts are not in dispute. The jury found that a valid contract existed; both parties agree that the sales contract was executed and escrow established on October 22, 1984, prior to

the expiration of the exclusive agency agreement. The general rule is that when an owner makes a sale in violation of an exclusive listing, the measure of damages is the amount of commission the broker would have earned had it made the sale. *Mattingly v. Bohn, supra.* Under an exclusive authorization to sell, the broker is entitled to damages even though the broker did not procure the purchaser.

Notwithstanding the jury's response to Interrogatory #3, we conclude the trial court should have found in favor of J.D. Land. The judgment is vacated, and the trial court is instructed to enter judgment in favor of J.D. Land Co.

J.D. Land Co. will be awarded its reasonable attorneys' fees upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17A A.R.S.

HOWARD, P.J., and HATHAWAY, J., concur.