NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

COMMERCE REALTY ADVISORS, LTD; AND CRA, LLC,
*Plaintiffs/Appellants*,

*v.*

ZINKE INVESTMENTS LIMITED PARTNERSHIP, an Arizona
limited partnership; and BERNARD L. ZINKE and GLORIA J. ZINKE,
husband and wife, *Defendants/Appellees*.

No. 1 CA-CV 13-0742
FILED 12-09-2014

Appeal from the Superior Court in Maricopa County
No. CV2011-019472
The Honorable Arthur T. Anderson, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Roshka, DeWulf & Patten, PLC, Phoenix
By John E. DeWulf, Jennifer A. Stevens
*Counsel for Plaintiffs/Appellants*

Richard Q. Nye, LTD, Scottsdale
By Richard Q. Nye, Benjamin J. Branson
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

¶1   After the sale of real property subject to an exclusive listing agreement between Zinke Investments Limited Partnership ("Zinke") and Commerce Realty Advisers, Ltd. ("Commerce"), Zinke refused to pay a commission to Commerce or its assignee, CRA, L.L.C. ("CRA") (collectively, "Appellants"). The superior court entered summary judgment against Appellants, dismissing their claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the following reasons, we affirm in part and vacate and remand in part.

### FACTS AND PROCEDURAL HISTORY[1]

¶2   Zinke owned approximately 410 acres of real property ("the Property") near the Town of Gilbert ("the Town"). Commerce and Zinke partner Bernard Zinke entered into an Exclusive Listing Agreement ("Listing Agreement") on November 4, 2003. Phillip DeAngelis, a licensed broker, signed the Listing Agreement on behalf of Commerce.

¶3   Under the Listing Agreement, Zinke employed Commerce "as its sole and exclusive agent for the term of this Agreement to negotiate the sale of the Property." The Listing Agreement provided for a 60-month listing period that would extend under the following circumstances:

> If during the Listing Period, an option or right of first refusal to purchase the Property or any interest in the Property is granted by Client or an escrow is opened by Client or if negotiations involving the sale, transfer or conveyance of the Property to a prospective purchaser have been commenced by Client and are continuing, then the term of the Listing

---

[1]  We view the evidence and inferences drawn from it in the light most favorable to Appellants. *See Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291, 293, ¶¶ 13, 21, 229 P.3d 1031, 1033, 1035 (App. 2010).

> Period shall be extended with respect to such transaction(s) and negotiations for a period through the exercise or termination of the option or right of first refusal, the closing or termination of the escrow, or the termination or consummation of the negotiations.

If the Property were to sell "through a transaction commenced during the Listing Period," Commerce was entitled to receive a commission of 2.5% of the sales price, "whether the person or entity was procured by Broker or from any other source."

¶4 DeAngelis signed a letter resigning as Commerce's designated broker effective November 4, 2008, though Arizona Department of Real Estate ("ADRE") records list November 5, 2008 as DeAngelis' last day as Commerce's designated broker. Commerce signed an Assignment Agreement transferring its "rights, privileges, and interest" under the Listing Agreement to CRA, effective November 5, 2008. Zinke was not asked to consent to the assignment and did not consent to it.

¶5 For purposes of its motion for summary judgment, Zinke conceded it began sales negotiations with the Town during the Listing Agreement's 60-month term. Zinke and the Town closed a sale for a portion of the Property and associated rights of way on March 4, 2009. Zinke did not pay Appellants any commission.

¶6 Appellants sued Zinke, Bernard Zinke, and Gloria Zinke (collectively, "defendants") for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendants moved for summary judgment, arguing: (1) Commerce's failure to employ a licensed broker at the time its claim arose precluded recovery; and (2) Commerce's assignment to CRA was invalid. The superior court granted the motion for summary judgment and awarded defendants costs and attorneys' fees. This timely appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

### I. Standard of Review

¶7 Summary judgment is not warranted if there are material factual disputes or if the court must "choose among competing inferences," determine witnesses' credibility, or weigh the quality of the evidence. *Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 393, ¶ 12, 231 P.3d 921, 925 (App. 2010). This Court reviews a grant of summary judgment *de novo*. *L.F. v. Donahue*,

186 Ariz. 409, 411, 923 P.2d 875, 877 (App. 1996). Likewise, we review *de novo* issues of contract and statutory interpretation. *Pi'Ikea, LLC v. Williamson*, 234 Ariz. 284, 285, ¶ 5, 321 P.3d 449, 450 (App. 2014).

## II.     Commerce's Claims Arose When It Had No Designated Broker

**¶8**          A civil action brought to recover a real estate commission is subject to A.R.S. § 32-2152(A), which provides:

> An action for the collection of compensation earned may be maintained in the courts of the state by any broker or salesperson. *To commence the action the complaint shall allege that the plaintiff was a qualified licensed broker or salesperson at the time the claim arose.* Prior to hearing the action the court shall require the plaintiff to prove the alleged qualifications.

(Emphasis added.). The parties disagree about when Appellants' claim "arose" within the meaning of § 32-2152(A). The superior court ruled the claim arose when the Property was sold to the Town, finding Appellants conflated the "at the time the claim arose" language of § 32-2152(A) with A.R.S. § 32-2155(B), which makes it unlawful to pay compensation to a real estate broker "who is not licensed at the time the service is rendered." We agree.

**¶9**          Addressing a claim for a real estate commission owed under an exclusive listing agreement, the Arizona Supreme Court stated:

> When an owner gives one agent the exclusive right to sell within a specified time, he in effect contracts he will not within such time make a sale through another agent and if such be done, the owner has breached his exclusive agency contract. *It is not always necessary to constitute a sale that a conveyance must be made or the title pass. The word sale has not a fixed and invariable meaning. It may be given a narrow or broad meaning depending upon the circumstances and what the parties reasonably intend.*

*Mattingly v. Bohn*, 84 Ariz. 369, 371, 329 P.2d 1095, 1097 (1958) (emphasis added).

**¶10**          *Mattingly* makes clear that the parties' agreement is pivotal in resolving whether and when a commission is due under an exclusive listing agreement. *See also J.D. Land Co. v. Killian*, 158 Ariz. 210, 213, 762 P.2d 124, 127 (App. 1988) (interpreting parties' exclusive listing agreement as

requiring payment of a commission "upon the execution of a binding contract for sale."). The Listing Agreement here is unambiguous. It states a commission is "due and payable at the closing, *but only if the sale or exchange actually culminates in the transfer of an interest in the Real Property*." (Emphasis added.). The parties' agreed-upon contractual language makes clear that Commerce has no claim to a commission unless and until there is a "transfer of an interest in the Real Property." As such, Appellants' claims did not arise until Zinke transferred its interest in the Property to the Town on March 4, 2009.

**¶11** In urging a contrary conclusion, Appellants rely on *Bersani v. Basset*, 585 N.Y.S.2d 245, 246 (N.Y. App. Div. 1992), which stands for the unremarkable proposition that a real estate broker who renders "specific services, namely, bringing together the minds of the buyer and seller," is entitled to a commission when a sale later closes between those same parties, even though the broker's license has since expired. This holding is consistent with Arizona law. *See, e.g.*, *Barrett v. Duzan*, 114 Ariz. 137, 140, 559 P.2d 693, 696 (App. 1976) (broker bringing together parties who agree on sales terms and sign a binding contract is entitled to commission based on services rendered). Here, however, Appellants did not procure a buyer for the Property and have identified no services they rendered in connection with the Zinke-Town sale. Their commission claim does not arise from services they rendered but, instead, from the Listing Agreement's contractual terms regarding sales closing after November 5, 2008.[2]

**¶12** Because Appellants' claims arose on March 4, 2009, Commerce may not maintain an action to recover a commission under the Listing Agreement because it did not have a designated broker at that time. *See* A.R.S. §§ 32-2125(A), -2152(A). The superior court properly entered summary judgment against Commerce. We next consider whether CRA

---

[2] Appellants' supplemental citation to *Focus Point Props., LLC v. Johnson*, 235 Ariz. 170, 174-75, ¶¶ 19-23, 330 P.3d 360, 364-65 (App. 2014), is similarly unavailing. *Focus Point* held that a real estate agent could maintain an action to recover a commission because he "held an active Arizona real estate license at the time he earned the commission." *Id.* at 174, ¶ 17, 330 P.3d at 364. Here, however, a commission was not earned until ownership of the Property transferred to the Town.

may maintain its claims to the commission based on the Assignment Agreement.[3]

### III. Questions of Fact Exist Regarding CRA's Claims Under the Assignment Agreement

**¶13** For the first time on appeal, Zinke raises Commerce's licensing history as a basis for arguing the Assignment Agreement is invalid. "We do not consider arguments raised for the first time on appeal except under exceptional circumstances." *In re MH 2008-002659*, 224 Ariz. 25, 27, 226 P.3d 394, 396 (App. 2010). No exceptional circumstances exist here. We therefore confine our review to the argument Zinke advanced in its motion for summary judgment regarding the Assignment Agreement: that the assignment was "unlawful and void" because Zinke did not consent to it, as required by A.R.S. § 32-2151.02(B).

**¶14** A.R.S. § 32-2151.02(B) states that a broker "shall not assign a real estate employment agreement to another broker without the express written consent of all parties to the agreement at the time of the assignment." If, however, Commerce assigned only its right to collect a commission from Zinke, § 32-2151.02(B) does not bar CRA's claims. "As a contract includes both rights and duties, there is nothing to prevent these various interests from being separated, with the benefits of the contract being assigned, and the obligations of performance remaining with the assignor." *Valley Nat'l Bank of Ariz. v. Byrne*, 101 Ariz. 363, 365, 419 P.2d 720, 722 (1966) (holding the right to money under an existing contract is assignable, even though the entire contract, which included personal services, could not be assigned), *superseded by statute on other grounds as recognized in In re Vigil Bros. Constr., Inc.*, 193 B.R. 513, 516 (9th Cir. B.A.P. 1996). Indeed, Arizona courts have specifically upheld assignment of the right to collect real estate commissions. *See Bustrum v. Gardner*, 154 Ariz. 409, 410-11, 743 P.2d 5, 6-7 (App. 1987) (right of licensed real estate broker to commission is assignable).

**¶15** Appellants argue that, at a minimum, genuine issues of material fact exist regarding the assignment to CRA. We agree.

**¶16** The Assignment Agreement assigns Commerce's "rights, privileges, and interest under [the Listing Agreement]," and CRA accepted the "assignment of rights, privileges and interest under the Commission

---

[3] It is undisputed that CRA was licensed and had a designated broker as of March 4, 2009.

Agreement." According to Zinke, the agreement transferred not only Commerce's right to a commission, but also continuing obligations or duties Commerce had under the Listing Agreement. Appellants, on the other hand, contend only the right to collect a commission was assigned. The superior court ruled:

> The Court disagrees with CRA's underlying premise, i.e., that Commerce Realty had no obligation to perform under the Listing Agreement post-November 4, 2008. The Listing Agreement clearly provided that "*the term of the Listing Period shall be extended* with respect to [the sale of the Property to the Town] *for a period* through . . . the closing or termination of the escrow." [(Emphasis added.).] If Commerce Realty assigned only its interest in collecting the Commission, the obligation of performance itself remained with Commerce Realty. *See Byrne*, 101 Ariz. at 365. But Commerce Realty could not perform its obligation post-November 4, 2008. . . . Thus, the Listing Agreement was unlawful post-November 4, 2008 because Commerce Realty was unlicensed . . . and CRA stood in the same position as Commerce Realty insofar as its "rights, privileges, and interest" in the Commission.

¶17 The superior court thus concluded Commerce had remaining performance duties under the Listing Agreement when the assignment occurred. However, conflicting evidence and inferences exist regarding the scope of the assignment. In opposing summary judgment, Appellants provided declarations from DeAngelis and CRA broker Martindale, stating the Assignment Agreement transferred only the right to any commission due as a result of a sale involving negotiations before November 4, 2008. Furthermore, according to DeAngelis,

> [a]s of November 5, 2008, the only 'rights, privileges and interest' that Commerce Realty retained under the Listing Agreement were the right to payment of commissions owed if Zinke commenced negotiations for the sale of the Property before November 4, 2008. Thus, Commerce Realty intended to assign its interest in payment and right to collect [a] commission under the Listing Agreement to CRA, LLC.

Martindale's declaration similarly states that the intent of the assignment was to transfer Commerce's "interest in payment and right to collect commission[s] under the Listing Agreement."

**¶18** Whether Commerce had continuing duties under the Listing Agreement after November 5, 2008, such that its assignment transferred personal service duties in addition to the right to collect a commission, is a disputed issue that cannot be resolved from the four corners of the Listing Agreement and Assignment Agreement — at least not on the record before us. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158-59, 854 P.2d 1134, 1144-45 (1993) (when "contract language is reasonably susceptible to more than one interpretation," its interpretation should be submitted to the fact-finder); *J.D. Land Co.*, 158 Ariz. at 212, 762 P.2d at 126 (An agreement is ambiguous "if the language can reasonably be construed in more than one sense and the construction cannot be determined within the four corners of the instrument.").

**¶19** The operative documents are reasonably susceptible to conflicting interpretations regarding what Commerce assigned to CRA. As such, the scope and validity of the assignment could not be resolved as a matter of law based on this record. *See Taylor*, 175 Ariz. at 158-59, 854 P.2d at 1144-45. We therefore vacate the entry of summary judgment against CRA and remand for further appropriate proceedings regarding the validity of the Assignment Agreement.

## IV. Equitable Estoppel Does Not Apply

**¶20** Appellants argue Zinke is equitably estopped from raising the brokerage statutes as a defense. We generally review a decision not to apply equitable estoppel for an abuse of discretion. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007). Trial judges, not juries, determine whether equitable estoppel applies, "regardless of the presence of a factual dispute." *McCloud v. State*, 217 Ariz. 82, 86, ¶ 9, 170 P.3d 691, 695 (App. 2007).

**¶21** Equitable estoppel may apply when "the conduct of a party absolutely precludes the party from asserting rights which might have otherwise existed against another person who in good faith has relied upon the conduct and as a result of such reliance has changed his position for the worse." *Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 61, 730 P.2d 235, 237 (1986). A litigant asserting equitable estoppel must demonstrate that the opposing party induced reliance "by [its] acts, representations or admissions intentionally or through culpable negligence." *Flying Diamond Airpark, LLC*, 215 Ariz. at 50, ¶ 28, 156 P.3d at 1155 (internal quotation marks removed).

**¶22**     Appellants contend Zinke had a duty to communicate the status of sales negotiations and that DeAngelis justifiably relied on Zinke's silence in resigning as Commerce's designated broker and in making the assignment to CRA.  However, an "essential element of estoppel is that one seeking its protection must have lacked knowledge, and the means of acquiring knowledge, of the facts relied upon.  A party's silence will not operate as an estoppel against it where the means of acquiring knowledge were equally available to both parties."  *Honeywell, Inc. v. Arnold Constr. Co.*, 134 Ariz. 153, 158, 654 P.2d 301, 306 (App. 1982).

**¶23**     Commerce does not contend it made inquiries or attempted to acquire knowledge about negotiations between Zinke and potential buyers before accepting its broker's resignation and entering into the Assignment Agreement.  Moreover, equitable estoppel requires proof of intentional or culpably negligent action that caused a change in position.  *See Flying Diamond Airpark, LLC*, 215 Ariz. at 50, ¶ 28, 156 P.3d at 1155.  "Remaining passive and silent does not deprive a person of his legal rights.  In addition there must be some act to induce or encourage another to alter his position."  *Jarvis v. State Land Dep't*, 104 Ariz. 527, 532, 456 P.2d 385, 390 (1969), *modified on other grounds as recognized in Jarvis v. State Land Dep't*, 113 Ariz. 230, 550 P.2d 227 (1976).

**¶24**     Based on the record before it, the superior court properly declined to apply equitable estoppel.  This determination obviates the need to consider Appellees' contention that the licensing statutes prevent Appellants from asserting an equitable estoppel claim.

## CONCLUSION

**¶25**     We affirm the entry of summary judgment against Commerce.  We vacate the entry of summary judgment against CRA and remand for further proceedings regarding the validity of the Assignment Agreement.  We further vacate the superior court's order that CRA pay attorneys' fees and costs to Appellees, without prejudice to the right of the prevailing party on remand to seek such an award.[4]  We affirm the superior court's order that Commerce pay attorneys' fees and costs to Appellees.

---

[4]     Because the issue may arise on remand, we address the recoverability of mediation costs under A.R.S. § 12-332(A)(6), which authorizes an award for "[o]ther disbursements that are made or incurred pursuant to an order or agreement of the parties."  Because the superior court ordered the parties

**¶26** Pursuant to § 10 of the Listing Agreement, we grant Appellees' request for an award of attorneys' fees incurred on appeal against Commerce. *See Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.,* 213 Ariz. 83, 90, 138 P.3d 1210, 1217 (App. 2006) (when contract provides for recovery of attorneys' fees by successful party, court is required to award fees). Appellees are also entitled to recover their taxable costs on appeal from Commerce upon compliance with ARCAP 21.

**¶27** We deny Appellees' request for an award of attorneys' fees against CRA and deny CRA's corresponding fee request because neither party has yet prevailed on the merits. Additionally, because both CRA and Appellees have partially prevailed on appeal, we make no award of taxable costs as between those two parties.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

---

to participate in mediation, the corresponding costs are recoverable. *See Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 612, ¶ 29, 334 P.3d 1264, 1271 (App. 2014) (upholding award of mediation costs under § 12-332(A)(6)).