[Civil No. 2019. Filed December 30, 1922.]

[211 Pac. 570.]

## PHOENIX TITLE AND TRUST COMPANY, a Corporation, Appellant, v. ALAMOS LAND AND IRRIGATION COMPANY, a Corporation, Appellee.

1. Corporations—Officers Holding Bonds of Corporation Estopped from Claiming That Corporation had Forfeited the Right to Exchange Such Bonds for Other Bonds of New Issue.—Where a corporation entered into a contract with the president and the secretary of the corporation for the conveyance by such officers of land to the corporation in consideration for certain bonds and providing for the deposit of the bonds with a trust company for a certain period to enable the corporation to issue new bonds for which such existing bonds were to be exchanged, and such new bonds were not issued during such period because of refusal of

On estoppel of public corporation to deny validity of bonds, see note in L. R. A. 1915A, 916.

such officers to attach their signatures thereto, the officers, in an action to foreclose deed of trust securing the payment of old bonds, were estopped from claiming that the corporation had forfeited its right to exchange the old for the new bonds by failure to issue the new bonds within such period.

2. Corporations — Officers cannot Exercise Duties to Further Own Interests Where Conflicting With Corporation's Interests.—Officers of a corporation cannot exercise their duties to further their own interests, where such interests and the interests of the corporation are conflicting.

3. Equity Regards That as Done Which Ought to have been Done.—Equity regards that as done which ought to have been done.

4. Corporations—In Action to Foreclose Deed of Trust, Court in Deciding That Bonds Should have been Exchanged for New Bonds will Order Old Bonds Canceled and Holders Equitable Owners of Bonds of New Issue.—In an action to foreclose deed of trust securing the payment of bonds, the court, in deciding that the deed of trust should not be foreclosed because the bonds should have been exchanged for bonds of same value of new issue and would have been so exchanged except for the refusal of holder of bonds at whose instance the suit was brought and another officer of the corporation to attach their signature to the new bonds, will order the old issue to be canceled and decree that holders of bonds of old issue be equitable owners of bonds of same value of new issue to be delivered to them on their attaching their signatures to the new bonds.

APPEAL from a judgment of the Superior Court of the County of Yavapai. E. Elmo Bollinger, Judge. Judgment modified and affirmed.

Mr. J. E. Russell, Mr. Leo T. Stack and Mr. Daniel E. Parks, for Appellant.

Messrs. Kibbey, Bennett, Gust & Smith, for Appellee.

McALISTER, J.—In this action the Phoenix Title & Trust Company seeks to foreclose a deed of trust naming it as trustee and made to secure the payment of an issue of first mortgage bonds of the Alamos Land & Irrigation Company in the sum of $40,000.

The suit was filed at the request of the holder of some of the bonds, W. T. Sawyer. Judgment was entered for the defendant Alamos Land & Irrigation Company, and from this judgment and the denial of its motion for a new trial plaintiff appeals.

The Alamos Land & Irrigation Company, appellee here, was incorporated under the laws of Arizona in 1914, and its assets consist chiefly of certain water rights, dams, dam sites, reservoir and reservoir sites on Date Creek, Yavapai county, Arizona, at a point known as Tres Alamos Canyon, together with the possessory right to certain lands in the same vicinity. On September 12, 1917, the Corporation Commission authorized the issuance by this company of its bonds in the sum of $40,000—eighty bonds of $500 each bearing interest at six per cent payable semi-annually—and thereafter they were issued though under date of September 1, 1917, but were not sold or otherwise disposed of until December 11, 1918, when, in pursuance of a resolution adopted by its board of directors on December 6, 1918, the company entered into a contract with W. T. Sawyer and Daniel E. Parks by which it agreed to purchase from the latter and the latter agreed to sell and deliver to it all their right, title, and interest—which was possessory only—in and to about 1,100 acres of unpatented land, located on Date Creek near the other property of the company, for and in consideration of these bonds, which were secured by a trust deed to the Phoenix Title & Trust Company, trustee. The bonds at the time were in the possession of the company, Sawyer and Parks having actual custody of them as president and secretary, respectively; but upon consummation of this agreement the trial court finds that they took possession of them for themselves, though in accordance with the contract which provides that they should be deposited with the Phoenix Title & Trust

Company for six months to enable appellee to issue, after procuring from the Corporation Commission permission to do so, new bonds of the company in the sum of $250,000, when they should be exchanged for $40,000 of this issue, they turned them over to the trustee which held them until some time after June 11, 1919, when seventy-eight of them were delivered to Sawyer, who receipted for them under date of June 12, 1919, though he testifies that he did not receive them until October or November of that year. The other two had been previously delivered to another party upon the request of Parks.

Previous to the execution of the contract of December 11, 1918, Sawyer and Parks had sold all the issued stock of the company—they being the owners and in control of it—to eastern parties, and, according to a statement in the brief of appellee, received as a consideration therefor $40,000 in cash, but at the request of the new stockholders they continued to act as president and secretary until March 20, 1920. Nothing, however, was done towards the new issue of bonds until about June 20, 1919, several days after the six months' period had expired, when Parks received from Lawrence R. Fitch of Rochester, New York, one of the new stockholders, a letter containing the latter's check for $625 to cover the fees and other expenses in connection with this proposed issue and a request that he take immediate steps to bring about the printing and execution of the bonds, their certification by the trustee, the substitution of $40,000 of them for the $40,000 issue then held by him and Sawyer, and a cancellation of the deed of trust securing the latter. Parks replied under date of June 21, 1919, acknowledging receipt of the $625, and stating that he would proceed at once to carry out the instructions of Fitch regarding the new bonds. Hence, in obedience to these directions and in compliance

with the agreement of December 11, 1918, and a resolution of the board of directors adopted December 12, 1918, authorizing the company to issue the bonds and the president and secretary to execute them, with interest coupons attached, and a trust deed to the Phoenix Title & Trust Company securing them, Sawyer and Parks as such officers applied to the Corporation Commission June 21, 1919, for permission to issue the bonds of the company in the sum of $250,-000, and obtained it on August 2d following, the order of the Commission providing that they should be first mortgage bonds and authorizing the company to cancel the old issue of $40,000, the applicants having represented both in their application and testimony that it was their purpose to do this. They had previous to that time, under date of March 1, 1919, prepared and executed as president and secretary of the company a deed of trust to the Phoenix Title & Trust Company securing this new issue, though it was neither delivered nor recorded, and had likewise prepared the bonds and had them lithographed, but had failed to complete them by attaching their official signatures.

It was found by the trial court that they were requested by the defendant to do this, but that they "neglected and refused to sign the bonds and as such officers and in their individual capacity, neglected and refused to exchange the $40,000 old issue of bonds for $40,000 of bonds of the new issue of $250,000," and that the failure to make the exchange "was the neglect and failure of Sawyer and Parks alone as the executive officers of the company and as individuals." It is further found that on March 28, 1920, while Sawyer and Parks were still in possession of the $40,000 of bonds, the consideration for the possessory right to the 1,100 acres of land, appellee demanded of them possession of the land, which they refused.

From the time the seventy-eight bonds were delivered to Sawyer in 1919 by the Phoenix Title & Trust Company they were held by him and Parks— fifty-one of them by Sawyer and twenty-seven by Parks—, the other two by another party. No part of the semi-annual interest due March 1, 1920, was paid by November 6th of that year, so the trustee, the Phoenix Title & Trust Company, at the request of Sawyer brought this action on that date for the purpose of foreclosing the trust deed securing these bonds. The court refused the relief prayed for, however, upon the ground, first, that Sawyer and Parks, the president and secretary of the company, neglected and refused officially and individually to complete for appellee the issue of bonds in the sum of $250,000 in accordance with the contract of December 11, 1918, and in consequence thereof rendered it impossible for appellee to exchange the $40,000 old issue held by the trustee for $40,000 of the new issue; and upon the ground, second, that Sawyer refused possession of the land when it was demanded by appellee in March, 1920.

In its assignments appellant contends that the court erred in permitting the legality of the bonds held by Sawyer and Parks to be questioned by the introduction of evidence regarding the second issue of bonds of $250,000, for the reason that appellee accepted the consideration for the bonds and made no effort to return it, and was therefore estopped from raising this defense. By the terms of the agreement of December 11, 1918, it is uncertain whether the consideration for the land would be the $40,000 issue of bonds then in existence or a like amount of an issue of first mortgage bonds of $250,000 on the same property to be thereafter issued. Upon the execution of the contract the old issue of $40,000 was delivered to the Phoenix Title & Trust Company, as trustee, for

the use and benefit of Sawyer and Parks, with directions that it hold them for six months from that time, the purpose of requiring their retention for this period being to give appellee time to make and issue new first mortgage bonds on the same property in the sum of $250,000, and when issued to exchange $40,000 of them for the old issue of a like amount held by the trustee for the use of Sawyer and Parks. If appellee did not deliver to the trustee the new bonds within the six months' period to be substituted for the old ones, the agreement made it the duty of the trustee to deliver to Sawyer and Parks the bonds it held for their use. If, however, appellee issued the new bonds and made the exchange provided for, it is apparent that the consideration for the possessory right of 1,100 acres of land would be sixteen per cent of an issue of $250,000 of first mortgage bonds instead of all of an issue of $40,000 of the same kind of bonds on the same property.

The exchange was not made within the six months, and the old bonds were delivered by the trustee to Sawyer and Parks in October or November following the expiration of that period; hence appellant claims that appellee is estopped from raising any question as to the legality of the bonds it seeks to foreclose. The new trust deed was made and executed by Sawyer and Parks during this period, under date of March 1, 1919; but so far as the record discloses nothing was done toward obtaining from the Corporation Commission permission to issue the bonds previous to June 21, 1919, when the letter of Lawrence R. Fitch of Rochester, New York, representing the stockholders all of whom lived in the east, was received by Daniel E. Parks, directing him to proceed with the bond issue and inclosing a check for $625 to cover the expenses connected with such proceeding. Even though the escrow period had expired ten days

previous to the receipt of this letter, Parks wrote
Fitch that they would proceed to carry out his in-
structions and did so except in the one particular of
executing the bonds as president and secretary, re-
spectively, of the company. We are unable to find in
the record any reason why they failed or refused to
do this. Mr. Parks testifies that they were not in-
structed to do so, but it is not apparent how more
definite instructions could have been asked for than
were contained in the resolutions of the board of di-
rectors adopted December 12, 1918, authorizing the
president and secretary specifically to execute the
bonds, and in the letter of Fitch containing directions
regarding the things they were to look after relating
to the matter of the issue of the bonds, among which
was their execution, a thing that only Sawyer and
Parks as president and secretary of the company
could do. Since, therefore, the time in which the ex-
change of bonds could have been made had passed
when Sawyer and Parks agreed to obtain from the
Corporation Commission permission for the company
to issue the bonds, and they agreed and did use the
funds of the stockholders for this purpose as well
as in defraying the expenses connected with prepar-
ing and lithographing the bonds, and since it was
within their power, in fact was their duty, to com-
plete the bonds by attaching their official signatures
as well as to make the substitution called for by the
contract, they cannot now be heard to say that appel-
lee forfeited its right to make the exchange, for it
was impossible as long as they refused to sign the
bonds, no one else having the right to do it. To per-
mit them to retain the old bonds under these condi-
tions would be permitting them to profit by their
own wrong. They were also directors of the corpora-
tion, and in dealing with it in an individual capacity
they could do nothing detrimental to it, but were re-

quired to act in good faith looking always to its best interests.

"They must not in any degree," as said in 10 Cyc. 787, "allow their official conduct to be swayed by their private interest, unless that interest is the interest which they have in the good of the company in common with all the other shareholders. This principle is asserted and illustrated by judicial decisions almost without number. This duty results from the nature of their employment, and without any stipulation to that effect. Their private interest must yield to their official duty whenever those interests are conflicting. They must neither exercise their trust for their own private exclusive benefit, nor for the benefit of third persons. They cannot, on the one hand, give away the property of the corporation or release its securities, or, on the other, take to themselves advantages not common to all the shareholders."

Appellant contends that it is immaterial that the exchange was not made, since, if it had been, appellee would have been in the same position it is now, had it defaulted in the payment of the interest on the substituted bonds. This, however, we do not know, since it appears from the testimony of Mr. Langmade, the successor of Daniel E. Parks as secretary of the company, that it did have the money to pay the interest coupons when they became due, but that their failure to do it was prompted by other reasons. The company doubtless felt that it would be in a better position to finance itself with sixteen per cent of a $250,000 issue of first mortgage bonds outstanding against it than it would be with all of an issue of $40,000, since in the latter instance only second mortgage bonds could have been thereafter issued.

It follows that the order refusing to foreclose the trust deed securing these bonds at the request of Sawyer was proper; but, inasmuch as "equity re-

gards that as done which ought to have been done," it is ordered that the old issue of bonds of $40,000 be canceled and that Sawyer and Parks are the equitable owners of $40,000 of the $250,000 bonds which shall be delivered to them upon their attaching to them their names as president and secretary of the company, the name of the latter as treasurer having already been lithographed on the interest coupons. It is further ordered that interest upon the old bonds be paid to March 28, 1920, when possession of the ranch was refused, and that all interest coupons on the new bonds taken by them falling due prior to the date upon which they shall deliver possession to the company of the land for which they are to be given be detached from such bonds before delivery.

With this modification the judgment of the lower court is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.