558 P.2d 732

Orvil L. TUCKER and Evelyn Tucker, husband and wife, Appellants,

v.

H. Carl BYLER and Paul W. Salter dba Self Service Auto Repair Company, Appellees.

No. 1 CA–CIV 2982.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 26, 1976.

Rehearing Denied Dec. 9, 1976.

Petition for Review Denied Jan. 11, 1977.

Cunningham, Goodson & Tiffany, Ltd., by James P. Cunningham, Phoenix, for appellants.

Carmichael, McClue, Stephens & Toles, P. C., by Larry S. Lazarus, Phoenix, for appellees.

## OPINION

JACOBSON, Judge.

This appeal concerns itself primarily with the interpretation of an option to renew contained in a lease of real property and the right to exercise an option to purchase during the renewal period.

Appellees, H. Carl Byler and Paul W. Salter dba Self Service Auto Repair Company (Byler and Salter), brought an action against Orvil L. Tucker and Evelyn Tucker (Tucker) for a declaratory judgment seeking a declaration of their rights under a lease and an option to purchase the leased premises. Tucker answered and counterclaimed, seeking possession of the property and to quiet title.

On cross motion for summary judgment, the trial court entered judgment in favor of Byler and Salter and Tucker has appealed.

The facts underlying this litigation are as follows. On November 20, 1970, John F. Utter and James P. Fallis (Utter and Fallis) were the owners of Lots 33 and 34 of Annacortes Subdivision at 10th Street and Cave Creek Road in Maricopa County, Arizona. On that date, they entered into a one-year term lease of this property with Byler and Salter. The lease, which was prepared by Byler and Salter without the benefit of counsel, provided, insofar as pertinent to this litigation, that:

"*Option to Renew* This lease shall be extended and renewed by and against the parties hereto for the further period of 1 year from the expiration of the term granted hereby at the same rental without any deduction or concession, and on all the terms, conditions and covenants herein specified, *including this renewal option*, unless the lessee shall give notice in writing of an intention to surrender the premises not less than 30 days prior to the lease period. (emphasis added)

"*Option to Buy* The lessor hereby grants the lessee the exclusive right, at the lessee's option, to purchase the demised premises, (together with all structures, improvements, and equipment thereon) free and clear of all liens and encumbrances at any time during the term of this lease or any extension or renewal thereof for the sum of *$37,500*. Lessee to pay 20% down and $300.00 or more per month including 7% interest with no prepayment penalty."

The lease also provided that the lessee had the right to build on the premises but that all the buildings that the lessee placed on the premises remained his property and he retained the right to remove them on termination of the lease. Monthly payments under the lease were $250.00 per month.

Byler and Salter, pursuant to the terms of the lease, erected a $20,000 steel building on the premises, which is removable. At the end of the first stated year of the lease (November 20, 1971), Byler and Salter, not having given written notice of their intent to surrender, continued in possession and paid Utter and Fallis the stated rental amount for an additional year. Near the expiration of the second year under the lease, Utter contacted Byler and advised him that the lease was about to expire and inquired whether he wanted to exercise the option to purchase contained in the lease. Byler advised him that they did not have the money to exercise their option. Utter

then told him he was going to put the property up for sale. Apparently no objection was made to this advice. Both Byler and Salter denied that they were contacted by Utter concerning the sale of the property or that their lease had expired.

After November 20, 1972, Utter contacted various real estate agents to sell the property. Among them was Richard Ludwig, who contacted Tucker about the land and subsequently handled the negotiations for the sale of the property from Utter and Fallis to Tucker. During the negotiations, Tucker was told that Byler and Salter were on a month-to-month tenancy, their lease having expired. Tucker subsequently purchased the property for $45,000.00, subject to the terms of the Byler and Salter lease. Following purchase, Tucker notified Byler that rent checks were to be sent to him. Byler and Salter complied with this request. Tucker also informed Byler and Salter that he wished to build on the back one-half of the property. This was agreeable with Byler and Salter, assuming a new lease agreement was satisfactory.

A new lease, together with a notice of termination, was prepared by Tucker and sent to Byler and Salter. Being dissatisfied with the terms of the new lease, Byler and Salter consulted an attorney. This attorney then sent a letter to Tucker, including a check for $7,500.00, stating that Byler and Salter were exercising their option to purchase the property for $37,500.00. Tucker rejected the tendered check and this litigation ensued with the trial court ultimately granting Byler and Salter specific performance of the option to purchase contained in their lease with Utter and Fallis. In addition, the trial court's judgment determined that the down payment of $7,500.00 was to be paid as of the date of the judgment and that monthly payments on the purchase price with interest to be computed from the date of judgment were to commence thereafter. The trial court specially rejected

Tucker's position that if specific performance of the option to purchase was to be granted, he was entitled to monthly payments on the purchase price from the date of tender, Byler and Salter making no payments, rental or otherwise, during the litigation or was entitled to have interest computed on the balance of the purchase price during this period.[1]

On appeal, Tucker makes four basic contentions:

1. That the option to renew language used in the lease is ambiguous, thus evidence of the parties' intention is admissible to show the true meaning of the option to renew, and the trial court could not properly determine this issue in a summary judgment proceeding;

2. That the renewal option language used in the lease was the result of two unilateral mistakes and this factual issue could not be determined by a summary judgment;

3. That the option to renew language used creates a perpetual lease which is void after the first renewal period;

4. That, in any event, Tucker, under the option to purchase is entitled to either interest on the balance of the purchase price from the date the option to purchase was attempted to be exercised, or the monthly payments on the purchase price from that date.

Since Tucker at least tacitly agrees that the option to purchase could have been exercised by Byler and Salter at any time the lease was validly in force, the court will concern itself, in answering Tucker's first three contentions, only with the option to renew language utilized by the parties. This provision provides, "This lease shall be extended and renewed . . . for the further period of 1 year from the expiration of the term granted hereby . . . on all the terms, conditions and covenants herein specified, including this renewal option . . . ."

---

1. The trial court specifically held that Byler and Salter became the "equitable owners" of the property on the date they attempted to exercise their option (November 19, 1973) and were liable for taxes, insurance and assessments on the property from that date.

Tucker, in support of his contention that the renewal option is ambiguous first points out that the initial renewal period is "for the further period of 1 year." He then argues that the use of the singular term "period of 1 year" denotes a single year only and renders the phrase "including this renewal option" mere surplusage, or meaningless, or at least ambiguous. We disagree. In construing the language of a contract, it is presumed that the parties intended to give the words employed their ordinary meaning and that the language used was placed in the contract for a specific purpose. *Phelps Dodge Corp. v. Brown*, 112 Ariz. 179, 540 P.2d 651 (1975). A corollary to this rule is that a court should not interpret a contract so as to render meaningless the language used by the parties, if a reasonable construction can be effected utilizing all the language of the contract. *Kintner v. Wolfe*, 102 Ariz. 164, 426 P.2d 798 (1967).

The question then becomes whether the renewal option is ambiguous when the phrase "including this renewal option" is read with the balance of the provision. Tucker argues that this provision must be ambiguous since the original lessors construed the agreement as granting only one renewal period—a two year maximum lease; Byler and Salter both intended that the clause made this a perpetual lease, that is, each additional year contained the option to renew; and the trial court construed it as a three year maximum lease.

We reject Tucker's contention that the provision is so ambiguous that it could be reasonably construed to grant only a two year maximum term—a base term of one year and one year under the option. The insertion of the phrase "including this renewal option" in the second renewal term belies this interpretation. However, the language of the provision is ambiguous as to the period that the lease should be extended after the third year. As previously indicated, the trial court found that a proper construction of the renewal provision would provide a three year maximum lease. Based upon the language employed, the tri-

al court's reasoning could be this: that the lease was for a stated term of one year with an option to renew "for the further period of 1 year" and by including the renewal option in the second year of the term, the lessees were entitled to a "further period of 1 year" and no more—a total of three years under the lease.

On the other hand, an equally logical construction of the renewal provision is that each year the option to renew is exercised the renewal provision is reactivated to be available to continue the lease at one year intervals *ad infinitum* —in essence a perpetual lease. In this sense, the option to renew is ambiguous.

However, this ambiguity does not help Tucker, for the policy of the law is that if a lease can be reasonably construed as one for a term certain as compared to an equally reasonable construction that the lease is in perpetuity, the construction favoring a term certain shall be adopted, there being a policy against perpetuities. As stated by the annotator in "Right to Second or Perpetual Renewal Under Provision for Renewal of Lease", 31 A.L.R.2d 607, at 611:

"[T]he courts, in view of their aversion to perpetual leases, refrain from construing a lease as granting a right to perpetual or indefinite renewals in the absence of unequivocal language or terms that will not bear any other construction." Also see, *Geyer v. Lietzan*, 230 Ind. 404, 103 N.E.2d 199 (1952).

We therefore hold that the construction placed on the contract by the trial court was in accordance with the language of the contract and with settled principles of law. This construction makes the term of the lease three years. Since the option to purchase was exercised during the third year, any ambiguity that the lease extended beyond the third year is simply immaterial. *Tyler v. Fred Harvey, Inc.*, 20 Ariz.App. 515, 514 P.2d 268 (1973) cited by Tucker is not applicable to this situation.

The construction of a written document is, in the first instance, a question of

law for the court. *C & T Land and Development Co. v. Bushnell*, 106 Ariz. 21, 470 P.2d 102 (1970). The trial court properly determined that the lease was not ambiguous in any material effect so as to preclude the granting of summary judgment on this basis.

Tucker next argues that a material issue of fact was raised as to whether the parties were operating under two unilateral mistakes which would void the renewal option. Again, the two unilateral mistakes urged were that Utter and Fallis thought the lease only granted one renewal period, while Byler and Salter thought the renewal period was perpetual. In support of this contention, Tucker cites the case of *Heywood v. Ziol*, 91 Ariz. 309, 372 P.2d 200 (1962). In *Heywood*, the court was construing an option to renew in a lease in which the amount of rental to be paid during the renewal period was deleted and initialled by the parties. The landlords' interpretation of that deletion was that the rental would be negotiated for the renewal period. The tenants' interpretation of the deletion was that rental would be the same as under the original term of the lease. The trial court found that there was no meeting of minds as to the terms of the option to renew. The Supreme Court upheld this determination, finding, based upon the written document itself, that the parties were laboring under two unilateral mistakes as to the legal effect of the deleted portion of the renewal provision and thus there was no meeting of minds as to the option to renew and it was void.

*Heywood* stands for the proposition that where both parties are aware that the contract is uncertain or ambiguous, and they attach different meanings to that uncertainty, this difference prevents the contract from being operative. *See,* Restatement of Contracts § 71(b) (1932).

■ However, as previously pointed out, the mistake on the part of Utter and Fallis was that a right to a second year option existed under the lease's option to renew. This mistake, based upon the unambiguous existence of at least a second option period under the lease, is not recognizable at law. Restatement of Contracts, § 70 (1932).

Since the "mistake" of Tucker in this matter is not one which the law recognizes, *Heywood* is not applicable and the trial court did not err in granting summary judgment on this basis.

Tucker's next contention that the lease provides for a perpetual term, has been disposed of by our conclusion that the trial court properly held that the term of the lease was for a three year maximum.

Tucker's last argument concerns whether the trial court properly denied him monthly purchase payments and interest from the date the option to purchase was exercised.

■ We believe that the trial court erred in not requiring a lump sum payment representing accruing monthly payments from the date of the exercise of the option to purchase. The duty of the purchaser as to the payment of the purchase price is controlled by the express provisions of the contract. The contract provides as follows:

"Lessee to pay twenty percent down and $300 or more per month including seven percent interest with no prepayment penalty."

■ The trial court found that the appellants had equitable ownership of the property on the date the option to purchase was attempted to have been exercised. It is an elemental principle that a contract for the sale of land recognizes that the purchaser becomes the equitable owner of the land and the vendor the equitable owner of the purchase money. The commencement of the current litigation did not alter the express contractual provision or the attendant equitable obligations flowing from the relationship of vendor and purchaser. As equitable owner, the appellees had the use of the subject property, yet the appellants were deprived of their equitable rights to the purchase money, accruing in monthly installments. In addition, Byler and Salter possessed the premises, making neither rental nor purchase payments, and con-

trolled the down payments during the course of this litigation. Moreover, there is no indication that Tucker's refusal to comply with the option to purchase was in anything but good faith. Under these circumstances, this court in the exercise of its equity jurisdiction is of the opinion that the trial court's judgment be modified by allowing Tucker a lump sum payment representing the monthly payments accruing from the date of the exercise of the option to purchase (November 19, 1973) and interest at 7% on the unpaid purchase price of $37,500.00 from November 19, 1973. *Volk v. Atlantic Acceptance & Realty Co.*, 142 N.J.Eq. 67, 59 A.2d 387 (1948).

The judgment of the trial court as so modified is affirmed.

SCHROEDER, P. J., and WREN, J., concurring.