752 P.2d 514

Perry **NORMAN** and Barbara Norman, husband and wife, Plaintiffs–Appellants,

v.

**RECREATION CENTERS OF SUN CITY, INC.,** an Arizona corporation, Defendant–Appellee.

No. 1 CA–CIV 9367.

Court of Appeals of Arizona, Division 1, Department A.

March 10, 1988.

**426**

Loretta Jacobs–Schwartz Law Office by Loretta Jacobs–Schwartz, Donna L. Hylarides, Phoenix, for plaintiffs-appellants.

Evans, Kitchel & Jenckes by G. Starr Rounds, Linda Hudson Miles, Phoenix, for defendant-appellee.

## OPINION

BROOKS, Judge.

This is an appeal by the plaintiffs in an action for wrongful discharge following summary judgment in favor of the defendant employer. We affirm.

### FACTS

In 1983, defendant-appellee Recreation Centers of Sun City, Inc., a nonprofit corporation (Rec Centers), employed plaintiff-appellant, Norman, as Rec Centers' operation supervisor of its facility in Sun City, Arizona.

On December 31, 1984, Norman signed an employment contract with Rec Centers. Paragraph 3 of the contract provided: "3. *Term.* This Agreement shall be for a three (3) year term beginning on the date of this Agreement." Paragraph 6 of the contract contained a termination-at-will provision as follows:

> 6. *Termination.* This agreement shall be terminated, subject to the terms and conditions contained in this Agreement, upon the occurrence of any one of the following events:
>
> . . . .
>
> (c) Without cause, Employee may terminate this Agreement by his actions which are contrary to the provisions of this Agreement or upon sixty (60) days' written notice to Employer, in which event Employee, at the option of the Employer, shall continue to render his services and shall be paid his regular compensation up to the date of termination. Employee shall, upon the termination of this Agreement, have no expectation of any vacation time and sick pay.
>
> (d) Without cause, Employer may terminate this Agreement upon written notice to Employee, in which event (i) Employee, at the option of the Employer, shall continue to render his services for up to 60 days and shall be paid his regular compensation up to the date of termination and (ii) Employee shall be entitled to an amount equal to three (3) months' salary (calculated at his then current monthly compensation rate), subject to

all federal, state and local employment taxes and withholding provisions, which amount shall be deemed to include any and all monies that Employee is due or Employee reasonably expects himself to be due.

The parties agree that in the event this Agreement is terminated, the Employee will be paid his pro rata monthly compensation through the last day of actual employment with the Employer.

All amounts due to the Employee after a termination of this Agreement shall be paid to Employee no later than the regular payday for the pay period during which the termination occurred, if termination is initiated by the Employee, or within three (3) working days or the end of the next pay period, whichever is sooner, if the termination is initiated by the Employer.

The parties understand and agree that the Employee may be terminated without cause by the Employer at any time subject to the provisions of Subparagraph 6(d) above.

Paragraph 12 was an integration provision which provided that no unsigned modifications would be binding, that the contract would supersede any prior agreements, and that the contract governed any inconsistent statements in personnel manuals.

Prior to signing the agreement, Norman's former supervisor, Steve Tritz told him, "that it would protect us for the next three years in our employment, and that we should read it and if we agreed with it, to sign it."

Norman read the contract several times, "till I got the gist of what it was all about" prior to signing it. He admitted that the agreement purported to give Rec Centers the right to fire him without cause:

> Q. ... Well, I take it from your testimony that you agree that that provision gives the employer the right to discharge you, Perry Norman, without cause.

**1.** A.R.S. § 23–355 provides:
If an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil

> A. In the context it is written, probably.

Rec Centers installed a new board of directors in January of 1985, and towards the end of that month, Norman heard a rumor that Rec Centers planned to fire him. Specifically, he heard that a director "was going to get Tritz and his cronies out of there."

Norman's employment was terminated on April 16, 1985. He believes that he was discharged because of his relationship with Tritz. It is undisputed that he was properly notified of his termination and that he was paid in accordance with his contract.

Norman filed a complaint against Rec Centers for wrongful discharge. In counts 1 and 3 he sought contract damages alleging breach of the "implied-in-fact contractual obligation of good faith and fair dealing." In count 2, he sought treble damages based on A.R.S. § 23–355.[1] In count 4, he sought tort damages based on an alleged violation of public policy.

The trial court granted Rec Centers' motion for partial summary judgment on all counts except a count alleging a breach of an oral agreement to increase his salary. This count was subsequently dismissed by stipulation.

On appeal, we address two issues: (1) whether the employment contract was ambiguous on its face; and (2) whether Norman's termination came within any of the exceptions to the general rule that, where no time limit is provided, contracts for personal services are terminable at-will by either party.

## THE ALLEGED AMBIGUITY

Norman first argues that his contract was ambiguous on its face because the three-year term provision conflicted with the termination-at-will provision. We disagree.

We construe a contract so as to give effect to all of its provisions. *New*

action against an employer or former employer an amount which is treble the amount of the unpaid wages.

*Pueblo Constr., Inc. v. Lake Patagonia Rec. Ass'n,* 12 Ariz.App. 13, 17, 467 P.2d 88, 92 (1970). As a corollary, we do not construe one provision in a contract so as to render another provision meaningless. *Tucker v. Byler,* 27 Ariz.App. 704, 707, 558 P.2d 732, 735 (1976). Where there is an inconsistency between two provisions in a contract, we will construe the more specific provision to qualify the more general provision. *Brisco v. Meritplan Ins. Co.,* 132 Ariz. 72, 75, 643 P.2d 1042, 1045 (App. 1982).

Employing these rules of construction, we construe Norman's contract to clearly provide for a maximum term of 3 years subject to an earlier termination by either party. This construction gives effect to both the term provision and the at-will provision and does not render the at-will provision meaningless. Under our construction, the at-will provision simply qualifies the term provision. This construction also comports with decisions from other jurisdictions. *Goldberg v. Bramson Publishing Co.,* 685 F.2d 224 (7th Cir.1982); *Maxwell v. Sisters of Charity,* 645 F.Supp. 937, 939 (D.Mont.1986); *Shaw v. Burchfield,* 481 So.2d 247, 252 (Miss.1985).

## TERMINATION NOT WITHIN EXCEPTIONS TO AT–WILL RULE

In the alternative, Norman argues that if his contract is construed to be terminable at-will, his termination came within each of the 3 exceptions to the at-will rule discussed by our supreme court in *Wagenseller v. Scottsdale Mem. Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985):

The trend has been to modify the at-will rule by creating exceptions to its operation. Three general exceptions have developed. The most widely accepted approach is the "public policy" exception, which permits recovery upon a finding that the employer's conduct undermined some important public policy. The second exception, based on contract, requires proof of an implied-in-fact promise of employment for a specific duration, as found in the circumstances surrounding the employment relationship, including

assurances of job security in company personnel manuals or memoranda. Under the third approach, courts have found in the employment contract an implied-in-law covenant of "good faith and fair dealing" and have held employers liable in both contract and tort for breach of that covenant.

147 Ariz. at 376, 710 P.2d at 1031. *See generally* Annot., *Modern Status of Rule that Employer May Discharge At–Will Employee For Any Reason,* 12 A.L.R.4th 544 (1982).

### I. Public Policy Exception

The public policy exception to the at-will rule is simply that an employer may not fire an employee for a reason that is against public policy:

Firing for bad cause—*one against public policy articulated by constitutional, statutory, or decisional law*—is not a right inherent in the at-will contract, nor in any other contract, even if expressly provided.

*Wagenseller,* 147 Ariz. at 381, 710 P.2d at 1036 (emphasis added). Our supreme court was careful to point out, however, that the public policy exception only applied to a "singularly *public* purpose," and not to a "merely private or proprietary" interest. 147 Ariz. at 379, 710 P.2d at 1034. The court concluded that there was a fact question in that case as to whether the plaintiff had been fired for refusing to engage in an activity that would have constituted the crime of Indecent Exposure in violation of A.R.S. § 13–1402. The court explained that Arizona's criminal code has a "discernible, comprehensive public purpose."

In the instant case, Norman contends only that he was fired because one of Rec Centers' directors was "going to get Tritz and his cronies," which included Norman. He then argues that this reason was contrary to the public policy that requires a director to act in accordance with those fiduciary duties that he owes to the members or shareholders. *See Phoenix Title & Trust Co. v. Alamos Land & Irr. Co.,* 24 Ariz. 499, 211 P. 570 (1922), *modified,* 25 Ariz. 103, 213 P. 574 (1923).

We conclude that even if Norman were fired as a result of a breach of a director's

fiduciary duty to Rec Centers' members, Norman's termination would not fall within the public policy exception. We base our conclusion on the discussion in *Wagenseller* of *Campbell v. Ford Indus., Inc.*, 274 Or. 243, 546 P.2d 141 (1976). In limiting the application of the public policy exception, the court in *Campbell* refused to recognize a cause of action for an employee who claimed that he was wrongfully discharged for exercising his statutory right as a stockholder to examine the books of his corporate employer. The Oregon court found that the right claimed by the employee was "not one of public policy, but the private and proprietary interest of the stockholders, as owners of the corporation." *Wagenseller*, 147 Ariz. at 379, 710 P.2d at 1034 (quoting *Campbell*, 274 Or. at 250, 546 P.2d at 145).

Norman argues, however, that *Campbell* is distinguishable because Rec Centers is a nonprofit corporation. We summarily reject this argument because Norman cites no authority for the proposition that there is greater public purpose in protecting nonprofit members than for-profit shareholders. ·

Norman next contends that his firing is similar to the shareholder's firing in *Bowman v. State Bank*, 229 Va. 534, 331 S.E. 2d 797 (1985). Bowman, as both a shareholder and an employee of State Bank, alleged that the bank threatened to fire her if she refused to vote for a merger. The court held that the public policy articulated in the Virginia statute regulating shareholders' voting rights would be frustrated if shareholders could not vote without fear of being fired. The rationale in *Bowman* is that shareholders should not be discouraged from exercising their statutory voting rights. However, Norman does not allege that he was a member or shareholder of Rec Centers. He does not argue that, as a result of his firing, any members were discouraged from exercising their rights. He does not contend that any member has been discouraged from suing any of the directors for failing to act within the scope of their official capacity or in good faith when firing Norman. We therefore conclude that Norman's discharge did not come within the public policy exception articulated in *Wagenseller*.

## II. Implied-in-Fact Exception

■ The implied-in-fact exception to the at-will rule is that, under certain circumstances, an employer's statements regarding employment may become part of the employment contract:

Courts have found such terms in an employer's policy statements regarding such things as job security and employee disciplinary procedures, holding that by the conduct of the parties these statements may become part of the contract, supplementing the verbalized at-will agreement, and thus limiting the employer's absolute right to discharge an at-will employee.

*Wagenseller*, 147 Ariz. at 381, 710 P.2d at 1036. *See Jeski v. American Express*, 147 Ariz. 19, 708 P.2d 110 (App.1985).

Norman alleges that he was assured prior to signing his contract that the contract was for his "protection." He concludes that there is at least a fact question as to whether these assurances should be implied into his contract.

Assuming that Norman is correct, there is nothing in the written contract which was inconsistent with an assurance that the contract was for his "protection." The contract did protect Norman. Among other things, it provided for 60 days notice of termination and 3 months' salary upon termination. However, there is nothing in the assurance of "protection" that carried with it an agreement to void the termination provision of the contract or to require that Norman could only be terminated for cause. We therefore reject the contention that this assurance modified the written agreement.

## III. Good Faith and Fair Dealing Exception

■ The good faith and fair dealing exception to the at-will rule is that firing without good cause breaches the implied-in-law covenant of good faith and fair dealing. *Wagenseller*, 147 Ariz. at 383, 710 P.2d at 1038. However, our supreme court declined to adopt this exception:

**430**

Were we to adopt such a rule, we fear that we would tread perilously close to abolishing completely the at-will doctrine and establishing by judicial fiat the benefits which employees can and should get *only* through collective bargaining agreements or tenure provisions.

147 Ariz. at 385, 710 P.2d at 1040. The court did note the general rule of contract construction that the implied covenant of good faith and fair dealing protects parties' rights to receive the benefits of their contract.

Norman then argues that the implied covenant protected his right to employment for 3 years since that was one of the benefits of his contract. However, as we noted earlier in this opinion, any contractual right to employment for 3 years was specifically subject to either party's contractual right to an earlier termination. Thus, by exercising its right to early termination, and by complying with the notice and severance pay provisions, Rec Centers did not breach any implied-in-law covenant of good faith and fair dealing.

## CONCLUSION

In summary, the parties chose to set forth their rights and obligations in a fully integrated contract. Since no breach by Rec Centers has been shown, Norman cannot be heard to complain that he is entitled to more than the benefits of his bargain. Summary judgment was properly entered in favor of Rec Centers.

## ATTORNEY'S FEES

We deny Norman's request for an award of attorneys' fees on appeal and grant Rec Centers' request under A.R.S. § 12–341.01(A) in an amount to be determined pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed.

CORCORAN, P.J., and JACOBSON, J., concur.