845 P.2d 483

**Paul SHANKS and Barbara Sue Shanks, individually and as next friend of Paul Shanks, Jr., Edwin Anthony Shanks, and Cody Ray Shanks, minors, Plaintiffs/Appellants,**

v.

**DAVEY TREE SURGERY COMPANY, an Ohio corporation, Defendant/Appellee.**

**No. 2 CA–CV 92–0009.**

Court of Appeals of Arizona, Division 2, Department B.

July 14, 1992.

Reconsideration Denied Aug. 27, 1992.

Review Denied Feb. 17, 1993.

**558**

Miller, Pitt & McAnally, P.C. by Thomas G. Cotter and Eugene N. Goldsmith, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by Steven Weatherspoon, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

Appellants Paul Shanks, his wife, and his children appeal from the granting of appellee Davey Tree Surgery Company's motion for summary judgment in their personal injury action, arguing that Davey either contractually agreed or undertook to perform duties owed to the public by Tucson Electric Power Company (TEP) and that fact issues exist as to whether Davey breached the duty of care it owed the Shanks. We disagree and affirm.

In June 1989, Paul Shanks was working as a tree trimmer for a company that had been hired by a homeowner to trim some palm trees in his yard. Behind the yard was an alley used for the collection of trash and for utility easements. An uninsulated overhead TEP power line was located in the alley. While Shanks was trimming one of the trees, a seed pod that he had removed fell onto one of the overhead lines. When Shanks finished trimming the tree, he began to descend and then reached out to knock the seed pod off the line. As he attempted to touch the pod, he received a shock and suffered electrical burns to his hand and calf.

Davey Tree Surgery had apparently provided tree-trimming services to TEP since 1981. The contract in effect at the time of Shanks's injury ran from January 1, 1987 through December 31, 1989. Davey's records showed that it had performed work at the address where Shanks was injured in January 1982; the nature of the work is not listed. Davey was again in the area in October 1986. Its records do not show that it ever trimmed the tree in question. The contract did not specify a particular line clearance standard that Davey was required to meet.

Shanks filed suit against both TEP and Davey. Both defendants filed motions for summary judgment. Action on TEP's motion was stayed because TEP was involved in bankruptcy proceedings. Davey's motion was granted, and only that ruling is presently before us.

In reviewing the granting of a motion for summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *Giovanelli v. First Federal Savings & Loan Association*, 120 Ariz. 577, 587 P.2d 763 (App.1978). When material fact issues exist, the granting of summary judgment is improper. *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990).

Shanks raises three issues on appeal: (1) Davey undertook to perform duties owed to the public by TEP, (2) Davey agreed to protect the public by virtue of its contract with TEP, and (3) a factual issue exists as to whether Davey's conduct fell below the necessary standard of care.

■ The question of the existence of a duty is a matter of law for the court. *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983).

The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks.

*Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). Unless Shanks has first established that Davey owed him a duty, there can be no issue as to whether Davey's conduct breached a duty. *Id.*

■ In order to determine whether Davey owed a duty to Shanks, we must first examine the nature of the duty TEP owes the public. Because of the risk of serious injury from contact with electric wires, power companies have a duty to exercise a reasonable degree of care in maintaining their power lines, *Salt River Valley Water Users' Association v. Compton*, 39 Ariz. 491, 8 P.2d 249 (1932), *rev'd on other grounds, MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958), and to take precautions whenever it can reasonably anticipate that people will come into contact with its lines. *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 652 P.2d 507 (1982). Moreover, utilities are required to comply with the National Electrical Safety Code, *Gonzales v. Arizona Public Service Co.*, 161 Ariz. 84, 86, 775 P.2d 1148, 1150 (App.1989), which provides, in part: "Trees which may interfere with ungrounded supply connectors should be trimmed or removed."

Shanks argues that Davey assumed TEP's duties to protect the public pursuant to Restatement (Second) of Torts § 324A (1965). Section 324A provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

That section, however, does not support Shanks's contentions. First, there is no allegation that Davey's negligence served to increase any harm to Shanks as required by § 324A(a); at most, Davey is alleged to have failed to act. Second, there is no contention that Shanks relied upon Davey to perform any services, a requirement for the application of § 324A(c). Shanks has not shown that he even knew of the contract between Davey and TEP, much less relied on it. Finally, § 324A(b) applies only if Davey undertook to perform the duties owed by TEP; it does not serve to create that undertaking. Shanks contends that Davey owed him a duty pursuant to the language of its contract with TEP.

■ It is clear that a duty to exercise care for the benefit of third parties may arise from a contractual relationship. *Forbes v. Romo*, 123 Ariz. 548, 601 P.2d 311 (App.1979). Here, TEP chose not to do the tree trimming with its own personnel but instead contracted with Davey to perform the service. The contract provided, in pertinent part:

Owner requires as a part of its utility operations to have a certain work performed, as follows:

To provide manpower, equipment, tools, and supervision necessary to perform tree trimming and clearance work as required by Tucson Electric Power Company.

Shanks also cites language in the contract that required Davey to perform all work "utilizing recognized and accepted industry practices and procedures applicable to such work" and "to abide by all applicable laws, rules, regulations and practices...."

In addition, Shanks argues that Davey is liable because it instituted a grid system pursuant to the contract. That argument was not raised until Shanks's motion for

new trial. Moreover, the only evidence of a grid system is Davey's answers to interrogatories in which it stated simply that one was employed from 1981 through 1989. That evidence does not even indicate what the grid system was designed to do, much less how its existence supports Shanks's contention that Davey owed him a duty.

The parties disagree as to what Davey's responsibilities were under the contract. In support of his contention that the contract required Davey to perform TEP's duties, Shanks cites the testimony of a TEP supervisor that Davey "was responsible for seeking out areas that needed trimming and trimming them," that it was to "[t]rim the trees that appeared to be a hazard," and that Davey was to trim trees it found to be a hazard as well as "tree problems that were called to us by the public." Davey notes that the supervisor also testified that Davey was not required to drive each alley every year searching for trees to trim and that, to his knowledge, Davey never performed or was paid for any work other than trimming that had been requested by TEP.

The fact that the parties disagree as to the meaning of its provisions, however, does not in itself create an ambiguity in the contract. *J.D. Land Co. v. Killian,* 158 Ariz. 210, 762 P.2d 124 (App.1988). The language used by the parties in a contract reflects their intentions and is controlling as to its meaning. *Smith v. Melson, Inc.,* 135 Ariz. 119, 659 P.2d 1264 (1983). When we construe the language of a contract, we presume that the parties intended to give the words their usual meaning and that "the language used was placed in the contract for a specific purpose." *Tucker v. Byler,* 27 Ariz.App. 704, 707, 558 P.2d 732, 735 (1976).

In applying these principles to the contract in question, we find that Davey was to do tree trimming and clearance "as required" by TEP. "Require" means "to impose a compulsion or command upon (as a person) to do something." Webster's Third New International Dictionary 1929 (1971). The wording of the contract states that Davey would do the work and would be directed by TEP to the areas or individual trees that needed attention. There is no language by which Davey assumed TEP's responsibility for keeping the power lines clear. Thus, we find no merit to Shanks's contention that Davey contractually assumed the duties TEP owes to the public and find the cases Shanks cites to be distinguishable.

In *Professional Sports v. Gillette Security,* 159 Ariz. 218, 766 P.2d 91 (App.1988), a security company had been instructed to monitor alcoholic beverage service and consumption at a baseball stadium. The instructions also required the guards, who were posted near the beer concession stands, to watch for underage persons attempting to purchase and consume alcohol. The court found that the security company had a duty to exercise due care to an underage person who consumed alcohol, became intoxicated, and was struck by an automobile when he left the stadium. The contractual duties in that case, however, expressly related to protection of the public, unlike the duties involved in this case.

In *Long v. District of Columbia,* 820 F.2d 409 (D.C.Cir.1987), also cited by Shanks, a motorist was killed in an accident at an intersection where the traffic signal was malfunctioning. The local power company, which had a contract with the district to repair faulty traffic signals during evenings, weekends, and holidays, knew the signal was out and had attempted to repair it but had failed. The court ruled that pursuant to its contract with the city, the power company was liable for breach of the duty the city owed to the public. Again, however, the power company there expressly assumed the city's duties during certain times of the day. There was no such assumption here.

Because we have determined that Davey did not owe Shanks a duty, we need not discuss his arguments that a fact question exists as to its breach of duty.

Affirmed.

LIVERMORE, C.J., and DRUKE, P.J., concur.