NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

SADEGHI HOLDINGS LLC, dba TRANSTYLE, *Plaintiff/Appellee,*

*v.*

MAYSAA H. MAJALY, et al., *Defendants/Appellants.*

No. 1 CA-CV 21-0314
FILED 2-10-2022

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2019-005926

The Honorable David Garbarino, Judge
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

———————————————

COUNSEL

The Hallstrom Law Firm PLLC, Phoenix
By Kyle Hallstrom
*Counsel for Plaintiff/Appellee*

Maysaa H. Majaly, Phoenix
*Defendant/Appellant*

Sabah Alnassary, Phoenix
*Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Vice Chief Judge David B. Gass joined.

---

**P A T O N**, Judge:

**¶1**         Sabah Alnassary ("Husband") and Maysaa Majaly ("Wife") (collectively "Spouses")[1] appeal the entry of summary judgment for Sadeghi Holdings, LLC dba Transtyle ("Transtyle").  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**         On September 1, 2017, Transtyle and Saba's Limo, Inc. ("Saba's Limo") entered into an Account Services Agreement ("ASA"). Under the ASA, Saba's Limo would provide transportation services to certain Transtyle clients, including several Phoenix-area hotels.  Section 2.12 of the ASA provides that "the terms of this Agreement and the Other Agreements will be secured by a personal guaranty by [Husband] and his spouse, in the form attached and incorporated herein by reference at Exhibit B (the 'Alnassary Guaranty')."[2]

**¶3**         Husband signed the Continuing Guaranty Agreement ("CGA") on September 1, 2017.  The CGA was executed by Husband "and his spouse," and provided that as an inducement for Transtyle to enter into the ASA with Saba's Limo, "each of you," referring to Husband and Wife, "has agreed to jointly and severally guarantee the obligations of [Saba's Limo] under the [ASA]."

**¶4**         The CGA notes that "[y]our obligations under this [CGA] are joint and several and are independent of the Obligations of [Saba's Limo]."  The document further provides that "[a] separate action or actions may be brought and prosecuted against any one or more of you regardless

---

[1] Husband and Wife have since separated but are referred to as "Spouses" for simplification.

[2] As discussed below, A.R.S. § 25-214(c)(2) requires both spouses to sign the guaranty to bind the marital community.

of whether an action is brought against [Saba's Limo] . . . or whether [Saba's Limo] or the other Guarantors are joined in any such action." Notably, beneath Husband's signature at the bottom of the CGA, the contract provides: "Consent of Spouse on the Following Page."

¶5 Wife acknowledged and signed the Consent of Spouse before a notary on September 19, 2017. The Consent of Spouse provides that "[t]he undersigned spouse of the Guarantor to the foregoing [CGA] confirms that she has read [the CGA], understands and consents and agrees to the terms of [the CGA]."

¶6 Transtyle sued Saba's Limo for breach of contract. Transtyle also sued Husband and Wife personally for breaching their personal guaranty. Counsel representing both Saba's Limo and Spouses withdrew from representation and when both Spouses and Saba's Limo failed to obtain new counsel, the superior court struck Saba's Limo's Answer. *See* Ariz. R. Sup. Ct. 31.2; *see Boydston v. Strole Dev. Co.*, 193 Ariz. 47, 49, ¶ 7 (1998) ("While a natural person can always appear *pro per*, a corporation is an entity unto itself quite separate from its owners and officers. Thus, to respect the corporate form . . . a corporation cannot appear in court without a lawyer.") (citation omitted).

¶7 Wife then moved for summary judgment, asking the superior court to render the Consent of Spouse "insufficient to serve as a contract of guaranty of wife and her marital community." The superior court denied Wife's motion, noting she signed the Consent of Spouse and agreed to its terms, including the provision providing a personal guaranty to secure Saba's Limo's performance and other obligations.

¶8 Transtyle later moved for summary judgment against Spouses, asserting: (1) the CGA and Consent of Spouse were enforceable, (2) discovery had closed, and (3) Spouses failed to file a proper Answer and Rule 26.1 disclosure statement. The superior court granted Transtyle's motion, finding: (1) Transtyle provided evidence to support its claims and (2) Spouses did not file a response to the summary judgment motion, request additional time to file a response, or file a disclosure statement to substantiate any defenses. The superior court subsequently held a hearing and entered a default judgment against Saba's Limo, and later against Spouses.

¶9 Spouses timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶10        We review a grant of summary judgment de novo and view the evidence and reasonable inferences in the light most favorable to the opposing party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003) (citation omitted). We review the record and consider only evidence presented when the superior court considered the motion. *Brookover v. Roberts Enters.*, 215 Ariz. 52, 55, ¶ 8 (App. 2007) (citation omitted).

¶11        Summary judgment is warranted if the movant "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The motion should be granted if the facts produced supporting the claim or defense—the Spouses' defense here—have so little probative value in light of the quantum of evidence necessary, such that a reasonable person would not concur with the proponent's asserted conclusions. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

¶12        The opposing party cannot rely merely on the pleadings, but rather "must, by affidavits or as otherwise provided . . . set forth specific facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e). Failure to respond may be deemed consent to the motion being granted. Ariz. R. Civ. P. 7.1(b). Likewise, when a motion is unopposed, the facts asserted by the movant will be considered true. *Sato v. Van Denburgh*, 123 Ariz. 225, 228 (1979) (citation omitted). Nonetheless, the court must still review the record to determine whether the movant is entitled to judgment before ruling. *Schwab v. Ames Constr.*, 207 Ariz. 56, 59, ¶ 15 (App. 2004) (citation omitted).

¶13        On appeal, Spouses argue: (1) the Consent of Spouse lacked consideration and was not a valid contract, (2) neither the ASA nor the CGA was tendered as to Wife, (3) Wife agreed to Husband serving as guarantor, not herself, (4) Wife is not bound to the ASA or CGA because she did not read either document, and (5) the superior court erred in granting summary judgment for Transtyle because it did not consider Wife's earlier affidavit filed in support of her motion for summary judgment.

I.        **Wife's guaranty is enforceable against her and was supported by consideration.**

¶14        Spouses claim the Consent of Spouse form is a separate contract that was not supported by consideration, making Wife's guaranty unenforceable. An enforceable contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Fed. Savs. & Loan*

*Ass'n*, 139 Ariz. 209, 212 (App. 1983) (citation omitted). Consideration is "a benefit to the promisor or a loss or detriment to the promisee." *Id.* (citation omitted). When construing contractual language, the presumption is that "the parties intended to give the words employed their ordinary meaning and that the language used was placed in the contract for a specific purpose." *Tucker v. Byler*, 27 Ariz. App. 704, 707 (1976) (citation omitted). "While it is not necessary that a contract state specifically that another writing is 'incorporated by this reference herein,' the context in which the reference is made must make clear that the writing is part of the contract." *Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 214 Ariz. 344, 346, ¶ 8 (App. 2007) (quoting *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 268 (App. 1983)).

¶15        "A guaranty is a collateral promise by one person to answer for the payment of some debt or the performance of some duty in case of the default of a third party who, in the first instance, is liable for such payment or performance." *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 180 (1941). Indeed, "[a] guarantee is a promise to pay an obligation between a creditor and debtor." *Howard v. Associated Grocers*, 123 Ariz. 593, 595 (1979). A guarantor's liability "depends upon the terms of the contract" and the guaranty is independent of and separately enforceable from the principal debtor's obligation. *Provident Nat'l Assurance Co. v. Sbrocca*, 180 Ariz. 464, 466 (App. 1994) (citation omitted).

¶16        A guaranty will only bind the marital community in Arizona if both spouses sign it. A.R.S. § 25-214(c)(2). Here, the ASA contains a term that the contract is secured by the personal guaranty of Husband and "his spouse, in the form attached and incorporated herein by reference." The CGA details the consideration provided, namely that Husband and Wife agreed to "jointly and severally guarantee" the obligations of Saba's Limo according to the ASA to induce Transtyle to enter into the ASA. *See Lessner Dental Lab'ys, Inc. v. Kidney*, 16 Ariz. App. 159, 160 (1971) ("[A] promise for a promise is adequate consideration.") (citation omitted). In other words, the personal guaranty was consideration for Transtyle entering into the agreement with Saba's Limo.

¶17        The CGA refers to Spouses collectively and provides that "[i]f more than one (1) person signs this [CGA], your obligations will be joint and several." The CGA also references the Consent of Spouse document by stating, in bold print: "Consent of Spouse on the Following Page." The Consent of Spouse explicitly refers to the CGA. Wife admits she signed the Consent of Spouse before a notary.

5

¶18 The Consent of Spouse was incorporated by reference to the ASA and the CGA, as the terms of the documents make numerous references to Wife and her guaranty. Spouses' argument that the guaranty is not enforceable against Wife is not supported by the language of the ASA, CGA, or the Consent of Spouse. As such, the superior court did not err when it found Wife's guaranty valid.

## II. Husband and Wife are both guarantors of Saba's Limo.

¶19 Spouses argue the language of the Consent of Spouse only suggests Wife read the CGA and had no objection to what Husband was agreeing to as to himself. They claim Wife did not indicate she was guaranteeing anything by signing the Consent of Spouse but was only aware that Husband had guaranteed something.

¶20 Contracts of guaranty are strictly construed to limit the guarantor's liability. *Horizon Res. Bethany Ltd. v. Cutco Indus.*, 180 Ariz. 72, 76 (App. 1994) (citing *Consol. Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 455 (App. 1984)). This court must give effect to the unambiguous language of a contract as written. *Hadley v. S.W. Props., Inc.*, 116 Ariz. 503, 506 (1977) (citation omitted).

¶21 The text of the signed documents does not support Spouses' argument that the ASA and CGA do not bind Wife. The Consent of Spouse contains Wife's notarized signature and explicitly states she is Husband's spouse. It refers to the CGA, and the text of the CGA names Husband's "spouse" as a guarantor. The CGA explicitly states it will be "binding upon *each of you*." (Emphasis added). Here, the ASA's text says Husband's and his spouse's personal guaranty will secure it. Spouses' argument is unsupported by the plain language of the ASA, CGA, and Consent of Spouse.

## III. The superior court did not err in granting summary judgment for Transtyle.

¶22 Spouses argue the superior court erred in granting Transtyle's motion for summary judgment because it failed to consider Wife's previous affidavit filed in support of her motion for summary judgment. Specifically, Spouses argue the court ignored Wife's affidavit stating she did not read the ASA or the CGA, a fact which they claim was sufficient to overcome summary judgment.

¶23 When ruling on a summary judgment motion, "[t]he trial court must consider all of the pleadings, depositions, answers to

interrogatories, admissions on file, and affidavits before making its decision on a motion for summary judgment; that is, the entire record must be examined." *Giovanelli v. First Fed. Sav. & Loan Ass'n of Phx.*, 120 Ariz. 577, 581 (App. 1978) (citing *Chanay v. Chittenden*, 115 Ariz. 32, 37 (1977)). Additionally, "an opponent to a motion for summary judgment does not raise an issue of fact by merely stating in his affidavit that an issue of fact exists, but rather he must show that evidence is available which would justify a trial on that issue." *N. Contracting Co. v. Allis-Chalmers Corp.*, 117 Ariz. 374, 377 (1977) (citation and internal quotation marks omitted).

**¶24** Parties signing an agreement must read the agreement and failure to do so does not allow them to avoid the contract because they believed the terms differed from what the terms were. *Mut. Benefit Health & Accident Ass'n v. Ferrell*, 42 Ariz. 477, 487 (1933), *overruled on other grounds by Occidental Life Ins. Co. v. Bocock*, 77 Ariz. 51 (1954). Though certain exceptions exist, none are present here. *See id.* at 487-89 ("[W]hen no reasonable excuse is offered or appears for the failure to read a document, except that the other party stated it to be what it was not, the party executing it will not be permitted to avoid it on the ground of fraud."). Indeed, "[a] person cannot sign a paper in ignorance of its contents and thereafter excuse such ignorance by the mere plea that [s]he was busy or that [s]he is habitually neglectful in such circumstances, and throw upon the courts the burden of protecting [her] from the consequences of [her] imprudence." *Id.* at 489.

**¶25** When Transtyle moved for summary judgment, the superior court indicated it reviewed the record notwithstanding Spouses' failure to respond. Ariz. R. Civ. P. 7.1(b); *see Schwab*, 207 Ariz. at 59, ¶ 15 (citation omitted). Nothing in the record suggests the court did not review Wife's previously filed affidavit. Additionally, Wife "merely stating" in her affidavit that she did not review the ASA, CGA, and Consent of Spouse documents does not create a disputed issue of fact. *See Allis-Chalmers*, 117 Ariz. at 377; *Hegel v. O'Malley Ins. Co.*, 122 Ariz. 52, 55 (1979) ("A motion for summary judgment is granted erroneously if, upon examination of the entire record, a reviewing court finds any disputed issue of fact that could affect final judgment.") (citation omitted). As such, the superior court properly granted Transtyle's motion for summary judgment.

**¶26** Transtyle requests attorneys' fees and costs on appeal. The ASA and CGA contain provisions regarding costs and attorneys' fees. As the prevailing party, Transtyle is entitled to costs, and we award reasonable attorneys' fees. A.R.S. §§ 12-341, -341.01; *see* ARCAP 21(a).

## CONCLUSION

¶27        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:        AA